(No. 24056.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY J. FEDELE *et al.* Plaintiffs in Error.

*Opinion filed June 11, 1937—Rehearing denied October 7, 1937.*

GRENVILLE BEARDSLEY, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, and MELVIN S. REMBE, of counsel,) for the People.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

A jury in the criminal court of Cook county found plaintiffs in error, Henry Fedele and Nick Collins, hereinafter called defendants, guilty of a charge of conspiracy to commit fraudulent and criminal acts in a primary election held in the eighteenth precinct of the twenty-sixth ward in the city of Chicago on April 10, 1934. Each defendant was sentenced to the house of correction for one year and fined $1. The Appellate Court for the First District affirmed their conviction and they have brought the case here on writ of error. Their co-defendants have not joined in this review.

Theodore K. Noss, an instructor in sociology at Purdue University, and a former teacher at Phillips Academy at Andover, Massachusetts, was a witness for the People. He was living in Chicago attending Chicago University and on April 10, 1934, he was a watcher at the polls in precinct

eighteen of the twenty-sixth ward. When he arrived at the polling place at about ten minutes of six o'clock in the morning, the election officials were present. The defendant Fedele, who was one of the judges, opened the ballots, found them to be unmarked, and initialed each ballot before it was handed to the voter. A number of times, Fedele, or another election official, would go into the polling booth to assist a voter. Noss testified that when Fedele's attention was called to the fact that a voter in need of assistance should make an affidavit to that effect, he said, "We will take care of that this evening." Noss said that a number of men who were not judges or clerks crowded around the table after the polls closed, and that Fedele emptied the ballots on the table. The Republican, Democratic, and proposition ballots were then segregated. Terry counted the proposition ballots and told Fedele the result. Fedele said, "You can't do that." Terry replied, "Oh, well, that's all right." The Democratic and Republican ballots were counted and tallied at the same time by the judges and clerks of the respective political parties. The count started about 6:30 and about 10 o'clock a man who was unknown to Noss, came in and said that there was no use to count all of the ballots. He had some figures which he insisted the judges and clerks enter in the total columns on the tally sheets. Some one objected because the clerks already had more votes tallied than the numbers given them by the stranger. This witness said the returns of the election were made out and signed by the officials from the figures so furnished. Fedele continued counting the Republican ballots and finished about 10:30. Noss testified that the defendant Collins sat at the right hand of Fedele during the count of the ballots and by means of a piece of lead held in his hand made marks on ballots. Usually he lifted the top ballot and marked the one immediately under it, but sometimes he marked the ballot which was on top.

A handwriting expert called by the People testified that, in his opinion, certain cross marks were made by a different person than the one who marked the remainder of the ballot. For example thirteen ballots, forming group 1 of exhibit 9, were, in his opinion, marked for James Vignola, Republican candidate for ward committeeman by one person, while the other crosses on these ballots were made by other persons. He also found that certain crosses appearing before the name of Joseph DeGrazio had been made by some one other than the voter. He found that crosses appearing before the name of Stanley S. Walkowiak had been erased and crosses inserted before the name of his opponent, John Broderick. On one ballot all the cross marks were in ink, except the one in front of Broderick's name. He testified that the ballots were in the same condition at the time of the trial as they were when he examined them during the re-count in the county court. He stated that most of the ballot booths were made of metal and that a voter could write or make a cross upon a single piece of paper upon a flat metal or wooden surface and no break would appear on the reverse side of the paper, but if the writing were done upon a soft surface, such as a pile of papers, there would be an impression on the reverse side of the sheet and on the paper beneath. A number of ballots had impressions showing through the reverse side which, in the opinion of this witness, showed that they were made over a stack of papers.

Defendants called several witnesses who stated they were at the polling place during the times in question. Most of them contradicted the testimony of Noss. Fedele said that no one but himself and the other election officials touched the ballots after they were taken from the ballot box, and while they were being counted. Collins denied touching or marking any of the ballots. Fedele and Collins had been well acquainted for more than two years before

the election, and when Fedele was appointed judge of elections he gave Collins as a reference.

Defendants' contention that the evidence does not prove them guilty of conspiracy beyond a reasonable doubt can not be upheld. The jury saw and heard the witnesses and was in better position to judge of their credibility than we are. Defendants were charged with conspiracy to commit fraudulent and criminal acts at the primary election of April 10, 1934, and while a common design is of the essence of conspiracy, it need not be proved that defendants came together, and actually agreed, in terms, to have that design, and to pursue it by a common means. It is enough to prove that they pursued, by their acts, the same object, one performing one part and another a different part, with a view to attaining the same end. The jury would then be justified in concluding that the defendants were engaged in a conspiracy to effect that object. (*Ochs* v. *People*, 124 Ill. 399.) Here the action of Fedele in signing the false return based upon figures supplied by a stranger rather than upon an actual count of the ballots, and the conduct of Collins in altering ballots while Fedele was calling the vote from them to the tellers, coupled with the other circumstances in evidence, amply sustain the finding of guilt.

The trial court did not err in refusing to issue a subpœna *duces tecum* for the production of a transcript of the testimony of the witness Noss in the county court. The transcript was not of a public nature and could have been obtained from the reporter in the same manner as the People had obtained it, and the court had no duty to compel the State's attorney to surrender his copy to assist counsel for defendants in making out their case. (*Walker* v. *Struthers*, 273 Ill. 387.) The case of *People* v. *Gerold*, 265 Ill. 448, 469, involved public documents, such as orders for warrants, held by the State's attorney, and so is not in point. The defendants also rely on *People* v. *Borella*, 362 Ill. 218, 222, but in that case the State's attorney, on cross-

examination of the defendants, appeared to be reading from a written statement purporting to have been made by them. At the conclusion of the cross-examination counsel for defendants asked to see the paper in order that he might further examine defendants and explain matters which were claimed to be impeaching. We held it was error to deny this request. But here the transcript had not been produced in the court room and no attempt was made to use it. If Noss had made prior inconsistent statements they could be proved with little inconvenience without the aid of the transcript obtained by the People.

Defendants contend that Harold Waters should not have been permitted to testify as to the result of his re-count of the ballots in the county court, because no foundation had been laid showing that the ballots and documents examined were competent, relevant, and material. From the abstract it appears that all of the ballots were received in evidence without objection, and thus all questions as to their preservation were waived. Objection was also made to the introduction of Waters' tally sheets on the ground that the original tally sheets were not in evidence. An examination of the abstract shows that they were in evidence without objection. By Waters' testimony the jury received the result of the re-count in the county court. The ballots and paraphernalia used in the precinct at the polling place were in evidence and available to defense counsel. None of these exhibits are abstracted, but it is not claimed that Waters' computation was erroneous. This was not an election contest calling for a re-count and from all that appears from the abstract before us it was not prejudicial to permit Waters to state the results of the re-count made in the county court.

It is next contended that the province of the jury was invaded by permitting the handwriting expert to testify that more than one person did mark the ballots. The witness merely stated his opinion as to a fact, and the jury

were free to accept it for what it was worth. (22 Corpus Juris, sec. 728, p. 632.) The province of the jury was in no manner invaded.

We find nothing to support the claim that the conduct and remarks of the State's attorney were prejudicial. On the few occasions the State's attorney overstepped the bounds of propriety, the court promptly sustained defendants' objections.

The instructions were not entirely accurate, but on reviewing a judgment of conviction in a criminal case our purpose is not to determine whether the record is perfect, but whether the defendant has had a fair trial under the law, and if the error in the record could not reasonably have affected the result of the trial, the judgment should be affirmed. The court should not have given an instruction defining reasonable doubt, and should have given the requested instruction concerning circumstantial evidence. Instructions No. 8 and No. 5 covered the same subject matter and only one of them should have been given. Instruction No. 8 is criticised by defendants because they say it assumed that the defendants did pursue the common design charged in the indictment and assumed that a conspiracy had been formed. The part referred to reads:

"The indictment charges the defendants with the crime of conspiracy, in that said defendants did unlawfully, wilfully, deceitfully, fraudulently and corruptly conspire, combine, confederate and agree together with each other and with divers other persons whose names are unknown to said grand jurors, with the fraudulent and malicious intent, unlawfully, wrongfully, wickedly, wilfully, knowingly, fraudulently to commit election frauds," etc.

It is insisted that by the words, "the indictment charges the defendants with the crime of conspiracy, in that said defendants did unlawfully," etc., commit the act charged, the instruction states, as a fact, that the court concluded, and so told the jury, that the defendants were guilty. No

such conclusion can reasonably be drawn from the language of the instruction. The instruction specifically states what defendants are charged with by the indictment, and does not assume defendants to be guilty. There was no prejudicial error in the instructions.

The judgment is affirmed.

*Judgment affirmed.*