(No. 24161.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL STRUTYNSKI, Plaintiff in Error.

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

GRENVILLE BEARDSLEY, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

A jury found Michael Strutynski guilty of the larceny of an automobile and he has sued out this writ of error to review the judgment of the criminal court of Cook county.

In the early morning of October 26, 1936, a car belonging to John Moscinski was taken by two armed men from a garage at 2622 West Chicago avenue. The garage attendant did not identify Strutynski as one of the robbers. Officer Thomas Tuite testified that on October 31, 1936,

he was in a police car with officer Sweeney traveling east on Madison street. When they were about 200 feet east of Wood street a car pulled out from the curb, directly in front of them. They swerved to avoid a collision and then pursued the car until it was wrecked near the intersection of Oakley avenue and Washington Boulevard. These officers were joined in the chase by a Chicago Park District car manned by officers Peterson and Campbell. Peterson fired several shots at one of the men who jumped from the stolen car, carrying a sawed-off shotgun. This man was taken into custody behind a gasoline station at the corner of Western avenue and Washington Boulevard and proved to be the defendant, Strutynski. Officer Tuite identified him as the man who sat in the stolen car next to the driver.

Strutynski testified that he went to a theater on Chicago avenue, one block from his home, and went home about 11:30 the night the car was stolen. He denied robbing the garage and stealing the automobile. He said he was in the Asta Rouge tavern on Madison street, a few doors east of Oakley avenue, about 9:30 on the evening of October 31, 1936. He left there between 11:15 and 11:30 after consuming a considerable amount of beer. While he was walking along the street he heard shooting; an automobile ran onto the lawn near him and two men jumped out. He did not notice which way they went, but, to avoid being shot, he ran back of the gasoline station, where he was arrested. He said he told the officers that he was not in the car, and said that officer Sweeney did not ask him anything about the shotgun after his arrest.

In rebuttal, Sweeney testified that after the arrest they placed Strutynski in a police car and asked him what he meant by starting out as he had done, and defendant said he did not know. He told Sweeney there was a man with him named Stanley, whom he met at the Up and Down tavern, but he did not know Stanley's last name. Stanley had offered to drive defendant home and they were on

their way home when the car was wrecked. Strutynski told the officers he had thrown the gun away because Stanley told him to take it and run, and that Stanley did not want to be caught with it. Officer Campbell corroborated Sweeney's story.

Strutynski contends that he was not proved guilty beyond a reasonable doubt and that his motions for a directed verdict should have been granted. He claims the evidence did not show that he was in the recent possession of the car soon after its theft. To warrant an inference of guilt from possession of goods recently stolen, it must be shown that there was an actual personal possession on the part of the accused, either singly or jointly with others acting in concert with him, and such possession must be shown to be exclusive, although it may still be a joint possession. (*People* v. *Barnes,* 311 Ill. 559; *People* v. *Bullion,* 299 id. 208.) Recent possession after a theft is sufficient to warrant a conviction unless the attending circumstances, or other evidence, so far overcome the presumption it raises as to create a reasonable doubt of the defendant's guilt. (*Watts* v. *People,* 204 Ill. 233, 244; *McMahon* v. *People,* 120 id. 581.) The possession must be such as to show that the defendant or the joint possessors took the property and that it was not taken by someone else. (*Watts* v. *People, supra.*) In the case last cited, at page 246, we said: "Possession of stolen property by a person soon after the theft may be the strongest character of evidence of his guilt, when considered in the light of surrounding circumstances, whilst under different circumstances it might be slight, if even any, evidence of guilt. The previous character of the accused may, in such a case, if shown to be good, repel all presumption of guilt. In such a case, everything connected with the possession must be considered, such as its proximity to the larceny, whether it was concealed, whether the party admitted or denied the possession, whether other persons had access to the place where

it was found, and the demeanor of the accused, and his good character. These circumstances, when in evidence before the jury, are proper to be considered by them."

We cannot ignore the fact that the defendant was positively identified as the man sitting at the right of the driver in the stolen car when it was wrecked; that he fled and was arrested, and that his testimony that he was walking along the street when this car was wrecked and that he ran to avoid being shot, was contradicted. Two of the officers testified that defendant told them he was being driven home by a man named Stanley whom defendant had met only a short time before. There is nothing to explain the defendant's possession of the stolen automobile. The fact that he was not the driver is unimportant, because he was, at least, in its joint possession with the other man and the jury was not bound to believe either of his conflicting statements—that he was walking along the street, or that he was only a passenger of Stanley's. Considering all the circumstances in evidence the jury was warranted in finding the defendant guilty.

In *People* v. *Abrams,* 360 Ill. 594, relied upon by defendant, only one of the four pursuing officers identified the defendant as one of the occupants of the stolen car. A co-defendant testified that Abrams was not in the car. Abrams denied knowledge of the stolen car, gave a reason, which was corroborated, for being on the street about two blocks from the place where the stolen car was wrecked, and introduced substantial proof as to his whereabouts when the car was stolen. We held that the trial court erred in failing to direct a verdict for the defendant but that case is of no avail to this defendant. The discussion of this point also disposes of defendant's contention that the fifth instruction should not have been given. He says there was no evidence to show that he was in the possession of the car and no evidence to explain his possession of it. We have pointed out that defendant was in pos-

session of the car with another person, and the rebuttal testimony showed that he attempted to explain this by testifying that one Stanley was driving him home.

The second instruction defining reasonable doubt should not have been given but this was not so prejudicial as to warrant reversing the judgment. (*People* v. *Fedele,* 366 Ill. 618; *People* v. *Touhy,* 361 id. 332.)

The defendant's next contention is that the third instruction should not have been given. It told the jury how to consider the testimony of any witness who had wilfully sworn falsely to any material fact. It is insisted that this permitted the jury to determine the question of law as to what were the material matters involved in the case. We approved a similar instruction in *Hirschman* v. *People,* 101 Ill. 568, 576. In *People* v. *McGrane,* 336 Ill. 404, no other instructions were given defining the essential elements of the crime and for that reason we condemned a similar instruction. In the case before us there was no dispute that the automobile had been stolen. Whether the defendant had such possession of stolen property as would tend to prove him guilty of larceny was the question before the jury. Instructions five and six defined the kind of possession requisite to a conviction. The *McGrane case* is not in point and the third instruction was properly given.

Counsel insists that the State's attorney, on cross-examination, improperly questioned defendant as to matters not included in his direct examination; that he thereby made the defendant the People's witness and, therefore, the prosecution could not impeach him. In his direct examination defendant was not asked whether he was carrying a shotgun, or whether the policemen asked him about having such a gun. He was asked these questions on cross-examination and denied making any statements about the gun and denied being in the automobile. Officers Sweeney and Campbell were then called in rebuttal. Cross-examination must be limited to the scope of the direct examination, (*People*

v. *Geidras,* 338 Ill. 340,) but it is also the rule that its scope rests very largely in the discretion of the trial court. (*People* v. *Gasior,* 359 Ill. 517; *People* v. *Jones,* 343 id. 291; *People* v. *Miller,* 342 id. 244.) During his cross-examination a defendant may be asked about details which would throw light on the essential facts referred to in his examination in chief, and if he attempts to relate what occurred on a given occasion and omits some details, such as his possession of a sawed-off shotgun, or throwing it away, this may be brought out on cross-examination. (*People* v. *Miller, supra.*) Strutynski's testimony as to what happened at the time he was arrested differed materially from the testimony of the officers who said he got out of the car and ran behind the filling station. Strutynski said he was walking along the street when the car ran up on the lawn near him and he fled to avoid being shot. He thus opened the door for inquiry as to whether he was, in fact, in the car, instead of walking along the street. It was proper to permit the State's attorney to inquire into all the circumstances accompanying the arrest. *People* v. *Miller, supra; People* v. *Yates,* 339 Ill. 421.

In this same connection Strutynski testified he had been in the Asta Rouge tavern on Madison street, a few doors east of Oakley avenue shortly before the car was wrecked. According to the testimony of the officers, he told them, when he was arrested, he had been at the Up and Down tavern where he met Stanley. It is not shown which tavern was nearer to the place of the arrest or to the place where the stolen car was turned out sharply into the street, in front of the police car, but this is all immaterial, for the whole purpose of the rebuttal testimony was to show that the defendant gave the officers an entirely different account of his previous doings that evening from that which he testified to at the trial. This was done by giving in detail the conversation which took place when he was arrested. The defendant was not impeached on an immaterial matter.

His last contention is that the State's attorney made improper remarks in his argument to the jury. We quote as follows:

Mr. Posner: "* * * this defendant is caught running away with a shotgun in his hands."

Mr. Bieber: "I object to that, if the court please, there is no testimony—"

Mr. Posner: "He is running away with the shotgun in his hands, and he is caught shortly afterwards disposing of—"

The court: "Objection overruled."

It is obvious that the State's attorney used the word "caught" in the sense of "detected" or "found" and the statement was a proper inference and was based on the evidence. Later the State's attorney asked the jurors, "Why did they smash through cars at Oakley, because as he said after they were caught, they were hot and the police were after them—." This statement was withdrawn by the prosecutor and the jury was instructed to disregard it. Again the State's attorney used words which might be construed to mean that the court was going to direct a verdict of guilty, but the abstract of record shows they were uttered by mistake. When they were called to his attention the State's attorney withdrew the statement and made it clear that he had meant to say that the jury should sign one of the forms of verdict which the court would give them.

The court instructed the jury that it was to be the judge of the evidence and that the attorneys were only stating, in their arguments, what they thought the testimony proved. The argument and remarks of the State's attorney were not prejudicial.

The judgment of the criminal court of Cook county is, therefore, affirmed.

*Judgment affirmed.*