(No. 31857.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARK PROVO, Plaintiff in Error.

*Opinion filed March 22, 1951.*

GEORGE M. CRANE, LOUIS BETTELHEIM, and LAWRENCE A. BERMAN, all of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (CHARLES W. CORCORAN, JOHN T. GALLAGHER, JOHN L. HENRICK, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Mark Provo, hereinafter referred to as the defendant, was convicted in the criminal court of Cook County, of the crime of murder, the victim being his wife, Norma Lucille Provo. He was tried before a jury, found guilty of murder as charged in the indictment, his punishment being fixed at ninety-nine years in the penitentiary. After motions for a new trial and in arrest of judgment were overruled, he was sentenced on the verdict.

The record discloses the following facts: The defendant, on Saturday, September 25, 1948, the day of the homicide, was twenty-four years of age and resided with his wife and their two children in a three-room apartment at 4349 South Ellis Avenue, in the city of Chicago. On

this date defendant's wife left the home about 12:30 P.M. to go downtown to do some shopping and attend a wedding and reception to which they had both been invited. Defendant remained at home and a short time thereafter his brother and a friend came in. They started drinking beer, which continued throughout the afternoon and evening. About 9:00 P.M. defendant's wife returned, at which time his brother and the friend left. Soon afterward the defendant went into the bedroom, took a thirty-two-caliber colt automatic from the dresser drawer, loaded it and returned to the living room, where he shot and mortally wounded his wife. After the shooting he remained for a short time in the home and, seeing his wife was dead, put the gun in his pocket, left the house, threw the gun in the lake and then went to see Rose Roberti, with whom he had been keeping company. He told her what had happened and she advised him to give himself up. He then left, procured a taxi and spent approximately three hours driving about the south side of Chicago. He then returned to his apartment, where the police found him when they arrived about 2:40 A.M. Sunday, at which time he told them he had shot his wife.

Defendant's counsel assigns a number of errors as grounds for reversal, which can be grouped as follows: (1) The trial court erred in restricting cross-examination of the People's witnesses. (2) Improper evidence was received and proper evidence excluded by the court. (3) The trial court erred in giving and refusing certain instructions. (4) The verdict of the jury was contrary to law and the weight of the evidence. (5) The court erred in allowing the State's Attorney too much latitude in cross-examination of defendant's witnesses. (6) The argument of the State's Attorney was highly inflammatory and prejudicial to the defendant.

It is contended by the defendant that the court erred in restricting cross-examination of the State's witnesses.

The specific testimony objected to is not pointed out, other than the general reference to the objections as shown in pages of the abstract. It seems to be directed to the testimony of Kenneth Blue, a police officer, who testified he was in charge of squad car No. 44, assigned at 2:40 A.M. to go to 4349 Ellis Avenue, where a woman had been shot, and that when he arrived defendant told him he had shot his wife. On cross-examination the officer testified defendant told him he had a gun in his hand and it went off accidentally; that his wife was sitting at a table in front of a window in the south wall and he was sitting in a chair at the north wall. The officer further testified that there seemed to be no signs of disorder; that the defendant was fully dressed and said he had called the police from a tavern at Forty-third Street and Ellis Avenue. After he testified as to this conversation with the defendant, he was asked, on cross-examination, if the defendant had not also told him the reason he did not make a call from the house. An objection was made which was sustained by the court. Defendant contends that as the officer testified on the stand as to a part of the conversation, that he should have been permitted to cross-examine as to the rest of the conversation, and cites the case of *People* v. *Scott,* 141 Ill. 195, where we held that if a witness testifies to a part of a conversation the other party is entitled to show all that was said on the same subject in that conversation. The rule is that the whole of an admission is to be taken together and that when a part of a conversation is put in evidence by one party, the other is entitled to put in the whole so far as it is relevant.

It is urged by the defendant that the testimony of Inez Foster, a witness for the People, as to acts of infidelity on his part occurring in 1946, was incompetent and highly prejudicial. Under certain conditions this might be a correct deduction. However, as contended by the People, this evidence was brought out in redirect examination after the

witness, on cross-examination, had testified that she had seen the defendant and his wife out together and that the defendant was always quiet and minded his own business. This was, as the People contended, a misleading inference that the defendant and the deceased had a normal and happy family relationship, which was rebutted when the witness was asked on redirect examination as to the conduct complained of. Under the circumstances, we are unable to say this was prejudicial error.

It is next contended that the People's exhibit 8, which was taken after defendant was in custody for three days, was involuntary, and that the People made no showing as to its voluntary nature. When People's exhibit 7, along with exhibit 8, consisting of statements made by the defendant, was offered in evidence, the jury retired and a hearing on the admissibility of the statements was had by the court outside the presence of the jury. The record discloses that no objection was made to People's exhibit 7, but objection was made to exhibit 8, the contention being that it was taken under duress. Counsel made no further showing as to duress, although the court offered to give him an opportunity to do so. Exhibits 7 and 8 were properly received in evidence.

The defendant next contends the court refused to allow the defense to show lack of motive in this case, however, it is not pointed out where such refusal occurred.

It is contended the court erred in allowing the State's Attorney to cross-examine the defendant and the defense witnesses beyond the limits of direct examination, and too much latiude was allowed in cross-examination. It is urged that the State's Attorney cross-examined the defendant at great length as to his motive before and after the shooting, as well as his actions a week before and immediately afterward, and the case of *People* v. *Geidras,* 338 Ill. 340, is cited in support of defendant's position that he was cross-examined beyond the scope of his direct examination and

that this was reversible error. In the *Geidras case* we held that in cross-examination of a witness, such examination should be confined to matters brought out upon direct examination, and that in a prosecution for robbery while armed with a gun, the defendant who testified in his own behalf could not be cross-examined as to his possession of a gun and as to his previous relations with a codefendant for the purpose of implicating him with other robberies where such matters have not been brought out in his testimony in chief. It is apparent that in that case the defendant was cross-examined about facts and circumstances in connection with robberies other than that for which he was on trial, and it was clearly outside the scope of his direct examination. As was said in that case, the effect of the testimony was to induce the jurors to believe the defendant had been engaged in other robberies. The case there referred to a separate and distinct offense and is not comparable with the questions here complained of. The examination here referred to bullet holes in the plaster of defendant's apartment near the point where his wife was sitting at the time she was killed. We have examined the record carefully as to the cross-examination concerning all questions as to the bullet hole in the plaster of defendant's apartment, questions as to what defendant had done with his wife after he shot her and why he had gone to the home of Rose Roberti after the slaying, and other questions as to his actions immediately following the shooting. The cross-examination complained of was that of the defendant who had taken the stand in his own defense. The defendant in a criminal case who takes the stand and testifies in his own behalf not only offers himself as a witness in his own behalf and testifies in chief, but thereby subjects himself to a legitimate and pertinent examination. It has been held that the extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court, and it is only in the case of clear

abuse of such discretion resulting in manifest prejudice that a reviewing court will interfere. We have held that latitude to be allowed in the cross-examination of witnesses rests largely in the discretion of the trial court, and a case will not be reversed for alleged improper rulings in that respect unless such discretion has been clearly abused. (*People* v. *Jones,* 343 Ill. 291.) The defendant, before he was cross-examined, testified about getting a gun out of the dresser drawer, shooting his wife, and that at the time the shot was fired he had no intention of shooting her; that he did not have any intention of firing the shot at his wife at all. The cross-examination he complains of also came after he had testified on such cross-examination as to keeping the gun in good mechanical shape and that he practiced with it and cleaned it himself. He was then interrogated on cross-examination as to firing one shot on the night of the death of his wife and was then asked as to the other bullet hole in the wall of his apartment. We think this was proper as to details which would throw light on the essential facts referred to in his examination in chief. During cross-examination a defendant may be asked about details which would throw light on the facts referred to in his examination in chief, and if he attempts to relate what occurred on a given occasion and omits some details, this may be brought out on cross-examination. (*People* v. *Strutynski,* 367 Ill. 551; *People* v. *Miller,* 342 Ill. 244.) It was held in *Banning* v. *United States,* 130 Fed. 2d 330, "The rule prevails that it is competent on cross-examination to develop all circumstances within the knowledge of a witness which qualify or destroy his direct testimony, although strictly speaking they may constitute new matter and are a part of the cross-examiner's own case." The extent of cross-examination of a defendant is largely controlled by the sound discretion of the trial court. (*People* v. *Matthews,* 359 Ill. 171; *People* v. *Jones,* 343 Ill. 291.) We have examined the questions here presented and are not of the

opinion there was any abuse of the sound discretion of the trial court in such matters.

It is further contended that by the conduct of the State's Attorney throughout the trial and in his argument to the jury the rights of the defendant were unduly prejudiced and that he was not given, by reason of such conduct, that fair and impartial trial to which he is entitled according to law. It is impossible to lay down a general rule in regard to what shall or shall not be said in an argument to a jury. It is always improper for a State's Attorney in his argument to the jury to attempt to get before it matters not in evidence. (*People* v. *Redola,* 300 Ill. 392; *People* v. *McMahan,* 244 Ill. 45.) But the State's Attorney in his argument has a right to dwell upon the evil results of the crime, and to urge a fearless administration of the criminal law and to comment upon the conduct of the accused. (*Siebert* v. *People,* 143 Ill. 571; *Sanders* v. *People,* 124 Ill. 218. However, he must refrain from using violent language, making inflammatory remarks and stating his own opinion. A number of objections were sustained to the improper remarks in both the opening and closing arguments for the People, and the statements should have been more moderate and in keeping with the evidence in the record.

Without going into all phases of the argument, we point specifically to the statement made by the assistant State's Attorney to the jury: "This man did not want her around any more. This man killed and murdered his wife, and this man did not succeed, and I am sure when you go back into your jury room, and I believe the evidence will show to you that this man did not succeed or intend in anyway to be true, to be faithful to his wife forever as he understood when he married that woman. I am sure each and everyone of you, having a father and mother, and being raised by fine parents, and being inspired by the love and devotion they showed each other, I am sure, ladies and

gentlemen of the jury, that you are not going to shock your own senses by saying that this man did not kill and murder his wife."

At the close of the opening argument the further statement was made, "Ladies and gentlemen of the jury, he did kill and he did murder the woman who bore him two children." In the closing argument a number of objections were made to the argument of counsel, which objections were sustained on statements made not based on evidence. In one particular statement, it was said, "What does he do, ladies and gentlemen? On every Saturday does he have target practice in his sun parlor? Why, of course, he lies there." The assistant State's Attorney in the argument for the People made the further statement, "It shows they are lying again and they are lying about the gun." Such language cannot be too strongly condemned.

We held in the case of *People* v. *Black,* 317 Ill. 603, "The rule that it is the duty of the State's Attorney to treat the defendant fairly applies to his argument to the jury as well as to the introduction of evidence. Counsel for the State has the right to argue to the jury his belief that the evidence warrants a conviction. It is legitimate argument, if the State's Attorney so believes, to tell the jury the State's witnesses told the truth and are more credible than those for the defendant, but it is improper for him to express his own individual opinion or belief of defendant's guilt except as that opinion is based on the evidence." This rule was adhered to in *People* v. *Hoffman,* 399 Ill. 57.

It is further contended by the defendant that the court refused to give instructions offered by the defense and in giving the instructions offered by the State. The defendant offered 23 instructions and they were all refused except 3. The State tendered 19 instructions and all were given. In going over all the instructions for the People and the defendant we find that one instruction was given by the

People on circumstantial evidence, while all instructions offered by the defendant pertaining to circumstances were refused. It has always been the rule that a defendant has a right to give instructions which properly present his theory of the case. (*People* v. *Ricili,* 400 Ill. 309.) It is true in the instant case the People gave a circumstantial evidence instruction which told the jury in a few words that circumstantial evidence is legal evidence and must be so considered. Two instructions were tendered on circumstantial evidence by the defendant and two on good reputation, which were refused. Slight modification might have been necessary, but this could have been done and defendant would not have been deprived of the benefit of his instructions. All of defendant's instructions on reasonable doubt were refused. Lengthy instructions on reasonable doubt are not approved, but we are of the opinion that properly worded instructions may call the jury's attention to the rule that a defendant must be proved guilty beyond a reasonable doubt.

In going over all the instructions in this case we are of the opinion the refusal of the instructions in connection with the improper argument to the jury, as indicated, constituted reversible error and denied to the defendant that fair and impartial trial to which he was entitled. As we said in the case of *People* v. *Hoffman,* 399 Ill. 57, quoting from *People* v. *Rongetti,* 331 Ill. 581, "One of the first purposes of orderly administration of the law is that a defendant, whether guilty or innocent, shall be accorded a fair trial. * * * There is not one law for an innocent man and another for a guilty man. Any man, however guilty of the crime charged, is entitled to be convicted according to law."

Other points are urged and argued by the defendant which have some merit, but, as they will probably not recur on another trial, they will not be discussed here. We are expressing no opinion on the sufficiency of the evidence.

Under the state of the record in this case we are constrained to grant a new trial, for the reason we are of the opinion the defendant has not had that fair and impartial trial to which he is entitled. The judgment of the criminal court of Cook County is, therefore, reversed, and the cause remanded for a new trial.

*Reversed and remanded.*