**People of the State of Illinois, Plaintiff-Appellee, v. Sylvania Garrett, Defendant-Appellant.**

**Gen. No. 52,179.**

First District, Second Division.

October 7, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillie, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Sylvania Garrett, was indicted for burglary. He was tried by the court without a jury, found guilty and sentenced to five years in the Illinois State

Penitentiary. From that judgment and sentence this appeal is taken. In this court the defendant urges that the trial court incorrectly ruled in denying his motion to suppress evidence, and that the defendant was not proved guilty beyond a reasonable doubt.

Some time between June 17 and June 20, 1966, several power saws, table saws and miscellaneous tools were stolen from the Chicago Dowel Company. One of the saws was traced to the basement of the building in which defendant lived.

The record shows that Sergeant Paschal of the Chicago Police Department's Burglary Division received an anonymous call from a woman on June 20, 1966, informing him that she had seen two men remove a saw from a burned-out building, put the saw into an automobile and drive away. The caller gave the officer the license number of the automobile, which number proved to have been issued to one James Ford. When Sergeant Paschal went to had helped several men remove a saw from an abandoned Ford's home at 5:00 p.m. that day, Ford told him he building earlier in the day, and Ford went with the officer to a building across the street from Chicago Dowel Company.

At the trial Ford testified that a man had asked him if he would like to earn $3 by helping move "something," and when he agreed he met the defendant and another man. He further testified: "They explained to me that I could make $3.00 to haul something. They didn't mention what it was, just a package, and I agreed. We proceeded to go where the package was located. I couldn't recall the street by name. I parked and Garrett and another fellow got out and went out to get the saw. I didn't see where they went to get it." The witness stated that the two men brought a power saw back to his car and put it in the trunk, after which they directed him to take it to 43rd and St. Lawrence. There he backed into a driveway in the alley where the two other men took the

saw out of the trunk of his car. The men told Ford to meet them later and they would pay him, but they did not come to the appointed place and he went home. Later, when Sergeant Paschal came to his home he went with him to the building where the saw was taken and identified the saw. He also identified the defendant as "one of the men that hired me to move that saw."

The defendant's testimony is that he was standing on a corner and saw Ford and another man talking; that one of the men asked the defendant if he would like to earn $10 by helping move a saw, and he agreed. Explaining how the saw happened to be placed in the basement of the building in which he rented a room, the defendant said:

> "I didn't tell Mr. Ford nothing. It wasn't me doing the directing. The other fellow told Mr. Ford to drive to my home. I don't know if the other fellow knew where my house was. I didn't tell him. He didn't drive directly to my home. He drove to a vacant lot. We did get to my home eventually. Mr. Ford did not know where my home was. Mr. Ford surmised where I lived. He most likely found it out of a clear blue sky; he picked this one, out of the whole City of Chicago, and said, 'This is where I am going to drop the saw off.'"

The defendant's story is unbelievably fantastic.

Sergeant Paschal testified that after Ford had pointed out the building where he was directed to pick up the saw and the building where he was directed to take it after it had been put into the trunk of his car, they met the owner of the latter building—Mrs. Wyatt—the defendant's aunt. The officer told Mrs. Wyatt he had reason to believe there was stolen property on the premises, and she gave him permission to search the building. She personally cleared the way for entry into the basement by removing several dogs from the doorway and taking

a lock from the door. Inside the basement was a 10-inch power table saw which Ford identified as the item which had been taken there from the abandoned building, and which was later identified by the president of Chicago Dowel Company as one which had been stolen. The saw was then taken by the police.

After his arrest, the defendant continued to deny that he had stolen the saw. At a pretrial hearing he moved to suppress the evidence of the saw found in the basement on the ground that it was obtained in violation of the Fourth Amendment rights of the defendant. The trial court denied the motion on the ground that the defendant lacked standing to raise the issue since he possessed no right of occupancy to the basement area; that his room was on the second floor and had never been entered by the police.

■ The Fourth Amendment to the Federal Constitution, and section 6 of Article II of the Illinois Constitution prohibit unreasonable searches and seizures. The exclusion of evidence obtained in violation of these provisions was developed in order to protect the rights of the accused. The Fourth Amendment rights of one incriminated by such evidence would be meaningless, and at the same time the accused would be incriminated in violation of his Fifth Amendment guarantees. The exclusionary rule was developed in order to prevent this dilution of rights, and the practice was developed that the accused have "standing" to entitle him to invoke the protection of the Fourth Amendment. One had to show a possessory or proprietary interest in the premises searched or the property seized before he could be heard to urge exclusion of the particular evidence seized. However, in admitting the proprietary or possessory interest in order to obtain standing under the Fourth Amendment, one was often necessarily incriminating himself by admitting ownership. Thus the accused had to de-

cide whether he should incriminate himself by admitting ownership in order to be able to argue his Fourth Amendment right, or remain silent, thereby foregoing his right, to avoid incriminating himself.

Jones v. United States, 362 US 257, offered relief from this dilemma by holding that when possession was itself an element of the offense charged, the accused was not required to allege a proprietary or possessory interest in the seized items. Nevertheless, he could challenge the constitutionality of the search and seizure. The Illinois Supreme Court, in People v. De Filippis, 34 Ill2d 129, 214 NE2d 897, said at page 135:

> ". . . we see in the logic of that decision a requirement that the conventional concepts of standing must give way whenever it is necessary to prevent unfairness, and to secure to an accused *both* his constitutional protection against unlawful search and seizure and his protection against self-incrimination. Speaking on a more specific plane, we do not see in Jones a proscription that possession must be an element of the crime charged, but interpret its holding as applying whenever proof of possession is sufficient to convict."

The court held that standing was granted to the accused because his possession of the items in question could have been a basis upon which his conviction could have been obtained.

 We do not argue with these propositions, and we agree with defense counsel in the instant case that the reason given by the trial court for denying defendant's motion to suppress was erroneous. The crime charged was burglary, and possession was an important element of the crime since the inference is allowable that one in recent, unexplained and exclusive possession of stolen property has committed the crime of burglary

or larceny. Under such circumstances, the defendant was not required to assert a proprietary interest in the evidence before he became entitled to urge its exclusion. However, it is the trial court's judgment which is reviewable, not the reasons assigned for the judgment.

In Campbell v. Powers, 139 Ill 128, 135, 28 NE 1062, the court agreed that the chancellor erred in his reasoning, but still held that the Appellate Court properly affirmed the chancellor's judgment. The court stated:

> "The entire showing made to the chancellor is in the record, and if, for any reason, the discretion should not have been exercised or the leave should have been denied, the action of the Superior Court in refusing the leave was properly affirmed. It is of the judgment of the court appellant is permitted to complain, and not of the grounds or reasons upon which the court founded its decision."

This principle has been applied in criminal actions. In People v. Thomas, 15 Ill2d 344, 348, 155 NE2d 16, the Illinois Supreme Court found it unnecessary "to determine the propriety of the mistrial on the assumption that it was granted to protect the prosecution from unfairness. *The record shows another basis for the action taken that in our opinion is sound.*" (Emphasis supplied.) In the present case we are of the opinion that there is another sound basis sustaining the trial court's judgment denying the motion to suppress.

In the case before us the only witness to testify at the hearing on the pretrial motion was the defendant, and his testimony merely detailed what happened at the time he was arrested. When asked whether the police made a search of his room he said he had heard that a search had been made of the first floor and the basement, and that the saw in question had been discovered in the basement. On cross-examination defendant said he rented and occupied a room in the building where the saw was

340

found, but that he did not occupy the basement. He also said that when he was arrested Ford was with the arresting officer and that Ford had made a statement that "this is the man who I moved the saw for." At this point in the trial the defense rested and closing arguments were made to the court before the motion was ruled on.

Both the State and the defense argued the point of defendant's standing to raise a claim. The trial court agreed that the petitioner had no standing, and thereupon overruled the motion to suppress. In its brief the State argues that "the full record on appeal establishes the reasonableness of the police officer's actions in searching the defendant's home." While this may be true, the point remains that when the trial court ruled on the motion it did not have before it the full record as it appears in this court. It had only the defendant's testimony on the hearing which has been briefly set out.

█ It is true that this court cannot affirm a judgment which is before us for review on evidence which was not before the trial court when the ruling was made. This court must look only so far into the record as to place itself in the position of the trial court at the time of its ruling in order to see if there is some valid reason for the ruling of the trial court. Otherwise, the constitutional rights of the accused would be receiving less than their full due. However, we feel that there was an independent ground on which the trial court's judgment should be sustained, and this basis existed in the record at the time the trial court made its ruling.

Under the statute, the burden is on the defendant to prove his case on a hearing on a motion to suppress. Ill Rev Stats 1965, c 38, § 114–12(b), provides in pertinent part:

"The motion shall be in writing and state facts showing wherein the search and seizure were unlaw-

341

ful. The judge shall receive evidence on any issue of fact necessary to determine the motion and *the burden of proving that the search and seizure were unlawful shall be on the defendant."* (Emphasis supplied.)

When the defendant rested his presentation on the motion to suppress, it had completely failed to meet its burden, since he had presented no facts whatsoever from which the trial court could have concluded that there had been an illegal search or seizure.

In People v. McNeil, 99 Ill App2d 273, 240 NE2d 721, the defendant, who lived on the second floor at 2156 South Millard, had been convicted of armed robbery. The police had obtained a search warrant for that address and had found stolen furs in defendant's apartment. The defendant did not object to the search, but did object to the introduction into evidence of stolen furs found at 2158 South Millard, on the ground that the police had no search warrant for those premises. After first referring to the statute on motions to suppress, the court said at page 280:

"Defendant failed to offer evidence on the circumstances of the recovery of the furs from 2158 South Millard. There is no evidence indicating any illegal search or seizure—from all that appears, the inhabitant of 2158 may have given his consent."

▮▮▮ We feel that the court's statement in McNeil is directly applicable to the situation presented in the instant appeal. The defendant failed to introduce any evidence regarding the circumstances of the search and seizure of the saw, and so failed to meet his statutory burden of proof. On that basis the trial court could have correctly denied petitioner's motion to suppress. However, it happened that information which subsequent-

ly came to the attention of the trial court would have thoroughly supported its decision to deny the motion, since it appears that the owner of the building did consent to the search of the premises.

██ The defendant next argues that the State failed to prove beyond a reasonable doubt that he was in recent, unexplained and exclusive possession of the items allegedly stolen. It is true that requisite criminal intent must be proved before a conviction can be obtained, but in a case involving burglary, intent may be established circumstantially. If the State can show the defendant is in recent, unexplained and exclusive possession of the proceeds of a burglary the law permits the inference that the defendant has committed the offense charged.

██ The important question in such cases becomes the matter of possession for purposes of raising the inference. The defendant argues that many people had access to the saw since other tenants moved in and about the building. From this argument we feel that the defendant shows he misconstrues the meaning of the word "exclusive" as it is meant to be used in the rule regarding possession. The fact that other people had access to the basement does not mean that the defendant did not have exclusive possession of the saw, since it could reasonably be determined from the evidence that the defendant had assumed the right to control the property. He helped move the saw to Ford's car, and we find utterly incredible his account of how the saw came to be placed in the basement of the building in which he had a room.

The trial court apparently believed Ford's testimony to the effect that he was directed to the building in which defendant lived and that the defendant and a third man took the saw from the car and placed it in the basement. The evidence shows that the defendant was the one who had the saw placed in the basement, and the fact that his possession of it at times was joint does not change the

conclusion that his possession at such times was exclusive.

In People v. Reynolds, 27 Ill2d 523, 190 NE2d 301, the defendant was picked up as a passenger in a stolen car which contained goods recently stolen from a service station. In holding the evidence sufficient to sustain the defendant's conviction for larceny of an automobile and burglary, the court said at page 525: "Evidence of recent, exclusive and unexplained possession of stolen property by an accused, *either singly or jointly with others*, may, of itself, raise an inference of guilt . . . ." (Emphasis supplied.)

Thus, "exclusive," for the purposes presently under discussion, does not mean "sole"; rather, it means possession by one or a group. In People v. Strutynski, 367 Ill 551, 12 NE2d 628, the court said at page 554:

> "To warrant an inference of guilt from possession of goods recently stolen, it must be shown that there was an actual personal possession on the part of the accused, either singly or jointly with others acting in concert with him, and such possession must be shown to be exclusive, although it may still be a joint possession."

In the case before us, there can be no argument about recent possession, since the saw was discovered in the basement on June 20, 1966, and it was established that the burglary may have occurred as late as June 20 and no earlier than June 17, 1966. Defendant's testimony that Ford just happened to stop in front of the building in which defendant lived, having no prior knowledge of the address, is unbelievable. We feel that defendant's explanation was considered by the trial court and found incredible, and that defendant's possession of the saw was not simply unexplained but was affirmatively explained in a manner highly damaging to defendant. Ford's more believable account would have shown the de-

344

fendant to be the one exercising authority over the moving and final placing of the saw.

■ Defendant's argument that others had access to the saw is beside the point. Access to the place where the stolen goods are found is only one of many factors to be considered in determining whether the inference of guilt is overcome when the accused has been shown to be in recent, unexplained and exclusive possession of the stolen goods. The presumption is that the current possession is sufficient to raise the inference of guilt. The State is not required to trace each step from the time of the burglary until the goods are found in defendant's possession.

Furthermore, this court will not close its eyes to common sense realities. The stolen property here involved was a heavy cumbersome saw requiring two men to move it. In People v. Malin, 372 Ill 422, 24 NE2d 349, the court said at page 428: "The circumstances and character of the goods, their salability, whether they are cumbersome or easily portable are also among the factors to be considered." In the present case the saw was cumbersome and certainly not easily portable. It was not the kind of item which others were likely to interfere with, once it was placed in the basement. We find that the saw was in defendant's recent, exclusive and unexplained possession, and the conviction should be sustained.

■ Defendant argues that the State failed to prove it was he who entered the premises of the Chicago Dowel Company and that the conviction should, therefore, be overruled, because a key element of the crime had not been proved; namely, defendant's unlawful entry into the building with the intent to commit a felony or larceny therein. Forcible entry was adequately shown by the State's evidence that a side door into the building had been broken and a lock forced open. This evidence, together with proof of goods missing from the factory, gives rise to the presumption that the building had been entered with criminal intent. One of the items stolen

345

was soon found in defendant's exclusive possession, as previously discussed. The inference that the defendant was guilty of burglary was justified by the record, and he was proved guilty beyond a reasonable doubt.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.