488 So.2d 595 (1986)
Gary SCOBEE, Appellant,
v.
STATE of Florida, Appellee.
No. BD-445.
District Court of Appeal of Florida, First District.
May 5, 1986.
*596 Michael E. Allen, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Lawrence A. Kadan, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Chief Judge.
This cause is before us on appeal from a judgment entered on the verdict of a jury finding defendant guilty of grand theft. Defendant was sentenced to five years of imprisonment. On appeal, defendant contends that the trial court erred in: (1) denying his motion for judgment of acquittal, (2) instructing the jury on the inference arising from proof of possession of recently stolen property, and (3) departing from the presumptive guideline sentence.
The facts are that when Mrs. Anderson arrived home after work on November 17, 1983, she found in her kitchen the three persons implicated in this theft, to-wit: the defendant, Gary Scobee, his wife, Carolyn Scobee, and one Linda Stiegel. The Scobees were acquaintances of the Andersons, and Mrs. Anderson inquired as to the whereabouts of her husband. The Scobees told her that her husband was in the bathroom. Mrs. Anderson then left her purse in one of the two bedrooms in the home and found her husband not in the bathroom, but either drunk or knocked out in another bedroom with the door closed. She went in and tried unsuccessfully to revive him. In the meanwhile, the defendant, who had followed Mrs. Anderson down the hallway, stood in the hall doorway in such a position as to block her view of her purse in the other room. Mrs. Anderson then heard a car start outside, and the defendant stated: "Let me see what the girls are doing." Mrs. Anderson testified:
Q. [counsel for prosecution] Did he ever come back and tell you what the girls were doing?
A. No, sir.
Q. Did you go to check on him?
A. Yes, I went down the hallway just behind him and time I got into the dining area, kitchen area, he was gone, and I ran when I saw the drawer was missing out of the bar, I said, what in the world and I went running out on the porch and by that time the car was going down the driveway.
On cross-examination, the victim further testified:
Q. [defense counsel] So some time transpired between the time he went down the hall and turned the corner and the time you went down the hall and turned the corner ...?
A. Not all that much... .
Q. And wouldn't he have had time... . Well answer me this, when he turned the corner, is that the corner right near the door?
A. No, you have the dining area and the kitchen part to go through and then out onto the porch.
Q. I see and how much time would you estimate transpired from the time he disappeared from your sight around the *597 corner and the time that you came around the corner?
A. Well it couldn't have been more than two or three minutes because my eyes hit the drawer. The bar sits like this and when you come out of the hallway into the living room of the trailer part and the bar is across that way and the minute I saw the drawer gone I said, what in the world is going on and I ran just as fast as I could across and onto the porch and then that's when I saw the car going.
Q. So it could have been two or three minutes between the time that he turned the corner and the time that you went, ran outside and saw the car going?
A. Probably two minutes.
The thieves had taken the missing kitchen drawer containing rolls of coins, Mr. Anderson's medication, and boat keys. After returning inside, Mrs. Anderson discovered her purse was also missing. Its contents included a billfold, a bank bag with the day's receipts from Mrs. Anderson's beauty parlor, and jewelry.
The vehicle was driven into Georgia, and an agent of the Georgia Bureau of Investigation recovered the drawer and a yellow bank bag from the passenger area of the vehicle. Defendant was the driver, and defendant's wife and Linda Stiegel were passengers in the vehicle at the time the property was recovered. Subsequently, the purse and part of its contents were discovered on top of the freezer in the kitchen of a home occupied by the three persons.
At the trial, defendant's wife testified that she stole the kitchen drawer and that Linda grabbed Mrs. Anderson's purse, and that both of these actions were done without the knowledge of her husband. She also testified that the drawer and the purse were put in back of the station wagon and covered, and that defendant was not told or made aware of the theft. Somewhat inconsistently, she also testified that Linda had exclusive possession of the purse from the time they left the Anderson home until the time of the arrest. The defendant's wife also testified that she was charged and convicted of grand theft in connection with the case and that she had previously been convicted on three occasions of offenses involving dishonesty or false statement. On cross-examination, it was brought out that defendant's wife had previously told Agent Lewis an entirely different story concerning the crime here involved, a story which exonerated both herself and her husband.

I.
In moving for a judgment of acquittal, the defendant admits the facts adduced in evidence and every conclusion favorable to the State which is fairly and reasonably inferable thereupon. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975). In Lincoln v. State, 459 So.2d 1030, 1032 (Fla. 1984), the Florida Supreme Court, quoting from its earlier decision in Heiney v. State, 447 So.2d 210 (Fla. 1984), upheld a robbery conviction for the driver of the get-away car, holding that in a circumstantial evidence case:
The question of whether the evidence fails to exclude all reasonable hypothesis of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse a judgment based upon a verdict returned by the jury.
On appeal, no issue is made of the standard jury instruction given by the trial court which allowed the jury to consider, as an additional circumstance of guilt, defendant's flight from the scene. Here, the jury was entitled to and did disbelieve the explanation that defendant, though present at the scene, did not participate in the offense and was not aware of the theft of the various items involved. We hold that the case was correctly presented to the jury and that the evidence is sufficient to support appellant's conviction of grand theft.

II.
The second issue raised on appeal is the trial court's giving of the following standard jury instruction on theft, an instruction *598 taken from Section 812.022, Florida Statutes:
Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to the inference that the person in possession of the property knew or should have known that the property had been stolen.
On appeal, defendant contends that the evidence was only of constructive and joint possession of the stolen property, and therefore "an inference of guilt" should not arise. In this, defendant confuses the language of the instruction which is that the jury be allowed to infer knowledge that the property is stolen.
There are two similar, yet separate and distinct, inferences that can be made from proof of possession of recently stolen property: (1) an inference that the possessor stole the property, as in Walton v. State, 404 So.2d 776 (Fla. 1st DCA 1981), and Griffin v. State, 370 So.2d 860 (Fla. 1st DCA 1979); and (2) an inference that the possessor knew or should have known the property was stolen. Section 812.022(2), Florida Statutes, supra. The latter was the charge given here.
In view of our holding on Point I, infra, there is evidence, under several recognized doctrines, from which the jury could find defendant had possession of the property. First, under the rule as stated in 16 Florida Jurisprudence 2d Criminal Law Section 1288 at 329:
[O]ne who is present at the commission of a robbery, with an unlawful intent to aid it by acts of encouragement, words, or gestures, may be held responsible as a principal... . In short, where several persons act in concert to accomplish the common purpose of robbery, the act of one in taking the property is the act of all, and this is true even though the one who took the property is not apprehended.
The evidence is uncontradicted that defendant was present at the scene of the crime and that he left in a vehicle with the stolen goods in the company of his wife and the other person implicated in the crime. These facts are not at issue. Frequently, as in the Griffin and Walton cases, supra, the defendant is not established as having been at the scene of the crime, and the location of the stolen property is relied on as the primary or, indeed, sole evidence of defendant's guilt but does not meet the requirements that a defendant's possession be exclusive, recent, and involve a distinct and conscious assertion of property. Griffin, supra at 861, Wharton's Criminal Evidence, Volume 1, Section 139 at 236-237:
Mere possession of stolen property, without other evidence of guilt, is not to be regarded as prima facie evidence of larceny, robbery, receiving stolen property, or burglary. It must be shown that the possession of the defendant was exclusive, recent, and involved a distinct and conscious assertion of property. The meaning of the terms "exclusive" and "recent" will vary with the circumstances of each case. [emphasis added]
The "exclusive" requirement does not mean that defendant's possession must be separate from the possession of all other persons. The joint possession of two or more persons acting in concert is "exclusive" as to any one of them. See 51 A.L.R.3d 727 Burglary  Exclusive Possession and cases cited therein. In the annotated case of People v. Garrett, 115 Ill. App.2d 333, 253 N.E.2d 39 (1969), 51 A.L.R.3d 718, 725, the court held:
In People v. Reynolds, 27 Ill.2d 523, 190 N.E.2d 301, the defendant was picked up as a passenger in a stolen car which contained goods recently stolen from a service station. In holding the evidence sufficient to sustain the defendant's conviction for larceny of an automobile and burglary, the court said at page 525, 190 N.E.2d at page 302: "Evidence of recent, exclusive and unexplained possession of stolen property by an accused, either singly or jointly with others, may of itself, raise an inference of guilt... ." [emphasis in original]
Thus, "exclusive," for the purposes presently under discussion, does not *599 mean "sole" rather, it means possession by one or a group. In People v. Strutynski, 367 Ill. 551, at page 554, 12 N.E.2d 628, at page 630, the court said:
"To warrant an inference of guilt from possession of goods recently stolen, it must be shown that there was an actual personal possession on the part of the accused, either singly or jointly with others acting in concert with him, and such possession must be shown to be exclusive, although it may still be a joint possession."
The facts also support the giving of the instruction based on the so-called "plain view doctrine" since the stolen property was found in the kitchen of appellant's residence and in the cargo area of the station wagon appellant was driving.
In Barnes v. United States, 412 U.S. 837, 845 at note 9, 93 S.Ct. 2357, 2362 at note 9, 37 L.Ed.2d 380 (1973), the United States Supreme Court upheld the constitutionality of the instruction on the unexplained possession of recently stolen property as raising an inference that the person in possession knew the property had been stolen, holding:
Of course, the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference. The jury must weigh the explanation to determine whether it is "satisfactory." ... The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. But the burden of proving beyond a reasonable doubt that the defendant did have knowledge that the property was stolen, an essential element of the crime, remains on the Government.
We hold, therefore, that the instruction was properly given, and the correctness of the inference was for the jury.

III.
The trial court departed from the sentencing guidelines for the following reasons:
The court has specifically and intentionally gone outside sentencing guidelines scoresheet in this case. I am advised that a recommended sentence is community control of 12 to 30 months incarceration. I would wholeheartedly agree with Mr. Lewis that it appears that you are a career criminal. The chances of rehabilitation are nil and sentencing guidelines should be aggravated and it is so ordered for the reasons stated. Those reasons will be typed and become a part of your permanent record.
The stated reasons for departure are not clear, and the existing case law requires us to remand for resentencing.
It is unclear whether the trial court, in referring to "career criminal," intended to adjudge appellant to be a habitual offender and sentenced pursuant to Section 775.084, Florida Statutes.[1] If so, the record does not reflect that the court has satisfied the requirements of that statute. See Crapps v. State, 483 So.2d 544 (Fla. 1st DCA 1986).
Further, the statement that the defendant's "chances for rehabilitation are nil" is insufficient because there is no explanation as to why the defendant cannot be rehabilitated. Sarvis v. State, 465 So.2d 573 (Fla. 1st DCA 1985). Likewise, it is unclear whether the trial court based his reason for departure on the timing of the commission of the various criminal offenses committed by appellant. Swain v. State, 455 So.2d 533 (Fla. 1st DCA 1984). This could be a valid basis for departure.
Accordingly, the judgment below is affirmed, the sentence is reversed, and the cause is remanded for resentencing.
ZEHMER, J., and BEN C. WILLIS (Ret.), Associate Judge, concur.
NOTES
[1] On page 40 of the record, in the presentence investigation report under "Recommended Disposition and Reason," it is noted: "Also, the State Attorney's office has filed habitual offender in this case, enhancing the sentence to be imposed by the Court."