484 So.2d 71 (1986)
Jessie WILLIAMS, III, Appellant,
v.
STATE of Florida, Appellee.
No. BG-83.
District Court of Appeal of Florida, First District.
March 5, 1986.
Michael E. Allen, Public Defender, and Glenna Joyce Reeves, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Henri Cawthon, Asst. Atty. Gen., for appellee.
NIMMONS, Judge.
This is another sentencing guidelines appeal.[1]
The defendant pled guilty to aggravated battery and burglary of a dwelling with assault. Since there was no trial and the parties have not included the presentence investigation report in the record on appeal, we have only the skeletal facts described by the prosecuting attorney at the time of the entry of the guilty pleas. It seems that the defendant broke into the female victim's home with the intent to assault her. After entering the home, he committed an aggravated battery upon her causing her to suffer great bodily harm. The state, in exchange for the guilty pleas, dropped a third count of robbery.
*72 The points which were tallied on the guidelines "scoresheet" were such that the allowable range under the guidelines was 4 1/2 to 5 1/2 years. The trial court exceeded the guidelines, imposing two 10-year concurrent terms.
The trial judge stated in writing the reasons for departure:
1. The Defendant as a juvenile was committed to the Department of HRS for the offense of Arson dated January 11, 1977. He was committed also in Case No. 76-466 for Arson and Burglary of an Occupied Dwelling, and again committed for Shoplifting dated August 18, 1978. At age eighteen (18) years, the Defendant was sentenced to Department of Corrections for three (3) years for Burglary of a Structure dated February 19, 1979 and paroled September 16, 1980. He was charged with violation of his parole on March 3, 1981 having only been out of prison for some six months. On July 10, 1981 the Defendant was again sentenced to the Department of Corrections on the offense of Attempted Burglary for five (5) years. On December 10, 1983 he was discharged as to that sentence and after only approximately ten (10) months committed the instant offense on October 6, 1984.
2. The continuing criminal behavior since the Defendant's age of sixteen years demonstrates his total disregard for the rehabilitative efforts of the past dispositions for his criminal behavior. There is no hope for rehabilitation of this individual.
3. The Defendant served approximately fourteen (14) months on his first three (3) year Department of Corrections sentence and some twenty-nine (29) months on the five (5) year Department of Corrections sentence. Under sentencing guidelines for standing convicted of Burglary of a Dwelling with Intent to Commit an Assault and Aggravated Battery, this Defendant would receive a recommended sentence of four and one-half (4 1/2) to five and one-half years (5 1/2) which with gain time might allow him to serve less time on these serious violations than he served on his last period of incarceration. This should not be the intent of a sentence and the punishment for his criminal conduct in the present cases should be substantially greater to protect society and deter him in future criminal activities.
4. To impose the suggested sentence under sentencing guidelines would make a mockery of this court's sentencing goal.
5. The frequency of the Defendant's criminal conduct and especially in view of the short duration from his previous periods of incarceration with the Department of Corrections demonstrates a need for punishment greater than that provided by Rule 3.701, Fla.R.Crim.P.
We, of course, recognize that Hendrix v. State, 475 So.2d 1218 (Fla. 1985), precludes reliance upon a defendant's prior criminal record for departure, at least to the extent that such prior record has already been factored in for scoring purposes. Id at 1220. However, as is evident from the trial court's above written reasons, the defendant, as a juvenile, had four commitments for offenses which, if he had been an adult, would have been serious crimes. Consistent with Fla.R.Cr.P. 3.701 d.5.(c), these commitments were not scored in arriving at the guidelines range because those juvenile offenses were all committed more than three years prior to the commission of the instant offense. Under Weems v. State, 469 So.2d 128 (Fla. 1985), those juvenile offenses could properly be relied upon as a clear and convincing reason for departure from the guidelines. See also Fowler v. State, 482 So.2d 602 (Fla. 5th DCA 1986.)
But, perhaps more important, we view the trial judge's narrative of this defendant's frequent contacts with the criminal justice system as something substantially more than a mere reference to the defendant's prior criminal record. Such a view is consistent with several recent post-Hendrix decisions of our sister courts. See Booker v. State, 482 So.2d 414 (Fla. *73 2nd DCA 1985); Smith v. State, 480 So.2d 663 (Fla. 5th DCA 1985); Johnson v. State, 477 So.2d 56 (Fla. 5th DCA 1985); and May v. State, 475 So.2d 1004 (Fla. 5th DCA 1985).
The defendant's continuing and persistent pattern of criminal activity since age 16, together with the timing of such offenses relative to prior offenses and releases from incarceration or supervision, clearly demonstrated the inadequacy of sentences for the subject crimes within the guidelines range. Indeed, as the trial judge suggested in paragraph 3 of his order, a sentence of this defendant for these crimes of only 5 1/2 years would be inordinately low, particularly in light of the liberal gain time provisions of Section 944.275, Florida Statutes (1985).
AFFIRMED.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] A review of Florida Law Weekly, which publishes all Florida appellate court opinions, shows that there has been a steady increase in the number of opinions in which sentencing guidelines issues have been raised and addressed. (The Second DCA recently referred to the "steadily mounting number of judicial interpretations of what the sentencing guidelines mean," Mora v. State, 484 So.2d 621 (Fla. 2nd DCA 1986)). In early 1985, 9% of the total number of opinions issued from the appellate courts of Florida were guidelines cases  this does not include Florida Supreme Court cases. That percentage has increased to the point where, for the past two months (January and February, 1986), guidelines opinions have constituted 17% of the total number of opinions written by the Florida appellate courts. As reflected in Florida Law Weekly, Volume 11, Numbers 1-9 (covering the first two months of 1986), 117 of the 676 DCA opinions  or 17%  were guidelines opinions. 80% of the 117 guidelines opinions discussed no other issues than guidelines issues. The above figures do not include dispositions without opinion, such as per curiam affirmances.