489 So.2d 201 (1986)
Juanita S. MIDDLETON, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1056.
District Court of Appeal of Florida, Second District.
May 28, 1986.
J. Marion Moorman, Public Defender, Bartow, and Karla Foreman Wright, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and James H. Dysart, Asst. Atty. Gen., Tampa, for appellee.
FRANK, Judge.
The Appellant, Juanita S. Middleton, joins the everlengthening list of the criminally convicted challenging the implementation of guidelines' sentencing.
Prior to being charged with a violation of section 401.41(3), Florida Statutes (1985), as a result of her felonious battery upon an emergency medical technician, Middleton had acquired a substantial record of convictions for violence, grand theft, delivery and possession of narcotics, disorderly intoxication and driving while intoxicated. Following the entry of a guilty plea to the instant offense, the trial court conducted a sentencing hearing during which it adjudicated her guilty, rejected placing her in an alcohol abuse program coupled with community control, and announced its purpose to depart from a presumptive sentence. The trial court's next comment was "I am going outside the guidelines to which you object. She's a menace to society in general and for the protection of society she needs to be in jail." Although the scoresheet in the record discloses a presumptive sentence of community control or 12-30 months incarceration, the trial court imposed a five year jail term upon Middleton. The trial court then directed the prosecutor to prepare a departure order physically embodying her criminal history record and pointing out that the present conviction is "the fourth conviction of this nature... ."
Middleton urges four points as bases for the reversal of her sentence. We have considered each of the grounds and reverse upon the principle expressed in Hendrix v. State, 475 So.2d 1218 (Fla. 1985), that "[f]actors already taken into account in calculating the guidelines score can never support departure." State v. Mischler, 488 So.2d 523 (Fla. 1986). In applying Hendrix to this proceeding, we have noted that the reasons for departure relied upon by the trial court are substantially in parallel with those appearing in the Hendrix departure order. See 475 So.2d at 1220 (Adkins, J., dissenting). If, indeed, the trial court adheres to the conclusion that Middleton is the threat to society she *202 is characterized as being at sentencing and if her criminal history record supports the invocation of section 775.084, Florida Statutes, reliance upon and obedience to that statute, as we perceive it, offer a valid basis for departure. See Johnson v. State, 486 So.2d 53, 54, fn. 1 (Fla.2d DCA 1986) and Hale v. State, 490 So.2d 122 (Fla.2d DCA 1986).
Accordingly, we reverse and remand for resentencing.
DANAHY, A.C.J., concurs.
LEHAN, J., concurs specially with opinion.
LEHAN, Judge, concurring specially.
I concur. I agree we must hold that there was an improper departure by the trial court from the sentencing guidelines based upon the court's conclusions that defendant was "a menace to society" and that such a departure was for "the protection of society" in view of defendant's "extensive criminal history" and her "pattern of behavior" shown by this having been her "fourth conviction of an offense of this nature," to wit, a violent crime. I write to address the debatability of, and conflicts among cases as to, the particular issue in this case which has not been specifically dealt with by the Supreme Court and also to make some background observations about sentencing guidelines cases in general.

First, as To Guidelines Cases in General.
The guidelines provide relatively few criteria as to when there may properly be departures. Essentially the task of establishing proper standards for departure has fallen upon the appellate courts on a case by case basis. But determining those standards cannot be accomplished solely from either necessarily correct logic based upon guidelines wording or from legislative history. Those determinations, in the final analysis, may depend to a substantial extent upon judges' perceptions of the proper basic philosophy of the guidelines. Yet there appear to be underlying differences of opinion among various of the judges of the district courts of appeal as to proper perceptions of that philosophy. Thus, there has developed a marked lack of consistency among the district courts of appeal in deciding guidelines departure cases, with differing results as to particular issues being supportable under differing views of that philosophy. See, e.g., Mischler, which noted that "[the] five district courts have reached disparate conclusions as to whether an identical reason is in fact `clear and convincing.'" 488 So.2d at 524-525.
A view that the trial court's basis for departure in this case was proper may seem supported by a philosophy that discretion of trial judges in the sentencing process was not to be wholly taken away by the guidelines. See Justice Adkins' majority opinion in Mischler, ("the guidelines were not intended to usurp judicial discretion and ... sentencing is still an individualized process." 488 So.2d at 525), and his dissenting opinion in Hendrix ("this decision removes the right of the trial judge to exercise his discretion... ." 475 So.2d at 1220). To simply say that there may not be an abuse of the trial court's discretion would not seem to provide a clear cut answer to all these types of issues. A determination of how much of an exercise of discretion constitutes an abuse of that discretion may involve how strongly the sentencing guidelines philosophy is perceived as being to preserve that discretion, as contrasted with taking away that discretion in the interests of uniformity of sentencing for like crimes under like circumstances.
The guidelines' "Statement of Purpose" in rule 3.701b. begins with the sentence, "The purpose of sentencing guidelines is to establish a uniform set of standards to guide the sentencing judge in the sentence decision-making process." Thus, any debate as to the underlying philosophy of the guidelines might seem to be resolved. That is, uniformity of sentencing standards is the goal. Hendrix. Nonetheless, the extent to which trial courts are to be guided towards that goal in the exercise of discretionary functions, and the extent to which the word "guide" is to be viewed as *203 mandatory as compared to only directory, does not seem entirely resolved.
Accordingly, in the consideration of various types of issues involving whether trial courts' departures from the guidelines are proper, it appears that the law can be firmly established only as the Supreme Court pronounces its views as those issues appear before it. It may be that the more the rulings of the trial courts may be seen to evidence a reluctance to achieve the foregoing goal, the more the trial courts will be guided in a mandatory fashion towards that goal.
The type of issue involved in this case provides an example of lack of consistency among district courts of appeal. Our postulation of the answer to the issue must represent an evaluation of how the Supreme Court is likely to rule when it decides the issue.

Second, as To the Particular Issue in This Case.
A relatively cursory review of the multitudes of guidelines cases decided by the district courts of appeal indicates that the following rough, and not intended to be complete, categorization of cases involving the need for protection of society as a stated basis for departure from the guidelines can be set forth:
(1) Need for Protection of Society Alone, Without Explanation, Not Enough

Lorenzo v. State, 483 So.2d 790 (Fla. 4th DCA 1985).

Martinez-Diaz v. State, 484 So.2d 633 (Fla. 2d DCA 1986).

Wilson v. State, 490 So.2d 1360 (Fla. 5th DCA 1986).
(2) Need for Protection of Society Based Upon Pattern of Conduct Shown by Defendant's Prior Record As Explained by Trial Court May Be Enough

Agatone v. State, 474 So.2d 846 (Fla. 2d DCA 1985).

Williams v. State, 484 So.2d 71 (Fla. 1st DCA 1986).

Young v. State, 488 So.2d 114 (Fla. 1st DCA 1986).

Fuller v. State, 488 So.2d 594 (Fla. 2d DCA 1986).
Contra:

McCray v. State, 488 So.2d 912 (Fla. 2d DCA 1986).

Roberson v. State, 483 So.2d 528 (Fla. 5th DCA 1986).

Casteel v. State, 481 So.2d 72 (Fla. 1st DCA 1986).
Our conclusion is that this case is controlled by Hendrix. Here, as decided in Hendrix, a departure may not be based upon a defendant's prior record which had already been factored into the presumptive guidelines sentence. See McCray; Roberson; Casteel. The "reason ..., that defendant's pattern of conduct renders him a continuing threat to the community, is based factually on defendant's prior convictions and on the current conviction, and is an improper basis for a departure. Hendrix... ." Casteel, 481 So.2d at 74. However, there are arguments for concluding otherwise. The trial court's basis for departure in Hendrix was that, in view of defendant's prior record, the presumptive guidelines sentence would not be a sufficient deterrent to him. On the other hand, in this case the trial court's basis was that because of defendant's "extensive criminal history" and her "pattern of behavior," this being "the defendant's fourth conviction of an offense of this [violent] nature," defendant would be a "menace to society" and the departure was for "the protection of society."
Mischler points out that "[f]actors already taken into account in calculating the guidelines score can never support departure." 488 So.2d at 525. The key to the issue in this case, therefore, appears to be whether a departure grounded upon the conclusion of a necessity for the protection of the public in view of the defendant's prior record (as compared, as in Hendrix, with a departure grounded upon a conclusion of a necessity for deterring defendant in view of defendant's prior record), is based upon "factors already taken into account *204 in calculating the guidelines score... ." Hendrix might be read to not say or necessarily mean that any conclusion which forms the basis for a departure and which arises out of a defendant's prior record is an invalid basis for the departure. Yet the conclusion of the need for a "deterrent" basis for the departure which was disapproved in Hendrix was essentially no different from the concluded need here for "protection of society." That is, the purpose of deterring a defendant from committing another crime is really no different from the purpose of protecting society from another crime by defendant.
The need for "protection of the public" based upon factors including a defendant's prior record is a criterion for sentencing for offenses committed prior to the adoption of the guidelines. Section 921.005(1)(a), Florida Statutes (1985).
As indicated above, there is post-Hendrix case law contrary to the result we reach. In Young the First District upheld the validity of a departure based upon the conclusion that the defendant "represents a serious danger to the safety of pedestrians and other motorists." After reciting the defendant's prior record, the court said that "the trial court's reason for departure can be viewed as more than a mere reference to his past traffic violations, but rather as an indication of a pattern of dangerous activity posing a threat to the safety of others." Id. See also Williams, upon which Young relied, where a distinction was said to exist between Hendrix and the type of issue here.
We, of course, recognize that Hendrix [citation omitted] precludes reliance upon a defendant's prior criminal record for departure, at least to the extent that such prior record has already been factored in for scoring purposes... .
But ... we view the trial judge's narrative of this defendant's frequent contacts with the criminal justice system as something substantially more than a mere reference to the defendant's prior criminal record. Such a view is consistent with several recent post-Hendrix decisions of our sister courts. See Booker v. State, 482 So.2d 414 (Fla. 2d DCA 1985); Smith v. State, 480 So.2d 663 (Fla. 5th DCA 1985); Johnson v. State, 477 So.2d 56 (Fla. 5th DCA 1985); and May v. State, 475 So.2d 1004 (Fla. 5th DCA 1985).
The defendant's continuing and persistent pattern of criminal activity since age 16, together with the timing of such offenses relative to prior offenses and releases from incarceration or supervision, clearly demonstrated the inadequacy of sentences for the subject crimes within the guidelines range... .
484 So.2d at 72-73.
Support for the view represented by the Young and Williams holdings may also be drawn from decisions holding, as has been pointed out in this case, that the habitual offender status of a defendant may provide a proper basis for departure. E.g., Hale; Johnson. See also Gonzalez v. State, 487 So.2d 91 (Fla. 3d DCA 1986). But see Moultrie v. State, 488 So.2d 558 (Fla. 5th DCA 1986). That is, if a departure grounded upon the conclusion, derived from a defendant's prior record, that he is an habitual offender is a proper ground for departure, i.e., is not based upon "factors already taken into account in calculating the guidelines score ...," then no logical reason may seem to appear why a departure grounded upon the conclusion, derived from a defendant's prior record, that he is a menace to society from which society needs protection, should not be proper. This may appear especially so when the trial court's conclusion is, as here, grounded not simply upon a reference to defendant's prior record but upon a reference to the particular pattern of conduct of a violent nature shown by the prior record. In fact, for a defendant to be classified as an habitual offender, the trial court must "determine if it is necessary for the protection of the public" to do so. Section 775.084, Florida Statutes (1985).
On the other hand, the habitual offender status authorized by section 775.084, may be viewed as a legislative exception to a *205 guidelines goal of promoting uniformity of sentencing for like crimes committed under like circumstances. See Hale and cases cited therein. This issue relative to that section is to be orally argued before the Supreme Court on September 12, 1986, in Payne v. State. 11 FLW, No. 18, May 2, 1986, p. ii.