509 So.2d 1165 (1987)
Daniel F. JAGGERS, Appellant,
v.
STATE of Florida, Appellee.
No. BQ-95.
District Court of Appeal of Florida, First District.
June 23, 1987.
*1166 Michael E. Allen, Public Defender and P. Douglas Brinkmeyer, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gregory G. Costas, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Daniel F. Jaggers appeals his 15 year prison sentence for a conviction of lewd and lascivious assault upon a child. He argues that the trial court erred in sentencing him by departing from the sentencing guidelines recommendation of 12-30 months incarceration or community control. We agree and reverse.
This is the second time that Jaggers has appealed the sentence for this conviction. In Jaggers v. State, 492 So.2d 418 (Fla. 1st DCA 1986), this court reversed appellant's 15 year sentence because there was no evidence that the trial court relied upon a sentencing scoresheet before imposing appellant's sentence.
Appellant was resentenced on October 3, 1986. The scoresheet originally totalled 293 points. The correct point total was assessed as 183 points which called for a sentence of community control or 12 to 30 months. (The parties stipulated that 80 points previously assessed for a prior similar sex charge in Missouri should be deleted from the scoresheet because appellant was never convicted of that crime. Also 30 more points were deleted because appellant was not under legal constraint at the time of his most recent offense.) At the resentencing hearing, the prosecutor entered into evidence records showing that appellant had been charged with a prior sex crime in Missouri and had been civilly committed to a mental health institution and then later released under supervision. The court also took judicial notice of a psychiatric expert's deposition and appellant's medical records which had been used at the original trial and prior sentencing hearing. Also at the resentencing hearing the victim's mother testified as to her daughter's trauma and continuing fears which resulted from appellant's action. The mother also testified that her daughter indicated that appellant had touched her other times as well. Such testimony was entered over appellant's objection that it constituted hearsay.
Appellant, while serving in Vietnam, suffered physical injury to his head and brain. He has been diagnosed as having organic personality syndrome which is an impulse disorder, not a sexual disorder. His testimony was corroborated by the psychiatrist's opinion, Dr. Zeitouni, who treated appellant at a Veteran's Administration Hospital. Appellant asserted that he did not have pedophelia as charged by the state and that his neurological damage was in remission due to medication. Further, he asserted that he had learned to control his impulses. The State proffered expert testimony of Dr. Zeitouni which revealed that in his opinion, every time appellant saw a girl he would be inclined to molest the child if there was no one there to stop him, for appellant is like a "car without brakes". The court again imposed a 15 year sentence granting credit for time served. The court entered a written order listing its guidelines departure reasons.[1]
*1167 We agree with appellant that the trial court's fourth reason for departure amounts to nothing more than dissatisfaction with the guidelines sentence and is invalid according to Williams v. State, 492 So.2d 1308 (Fla. 1986) and Scurry v. State, 489 So.2d 25 (Fla. 1986).
We also find the court's third reason for departure, mental trauma to the six year old victim, invalid given the facts of this case. The trial court based this reason for departure on the testimony of the child and the child's mother. (The record now before this court does not include the child's testimony given at the original sentencing hearing). The facts recited by the parties in the briefs from their first appeal reveal that appellant had been invited into the victim's home by the mother and while the victim and other children were in the living room watching television in their nightgowns, the victim's mother turned around in time to hear her daughter tell appellant "stop that", and pull down her nightgown. The victim then returned to watching television. When the mother took her daughter into the bedroom and asked what had occurred, the victim responded that appellant had lifted her nightgown and licked her. Appellant denied his actions when confronted. For this action 20 points were properly assessed on appellant's score sheet for victim injury, under "contact but no penetration". See Florida Rule Criminal Procedure 3.701(d)(7); Moore v. State, 469 So.2d 947 (Fla. 5th DCA 1985), quashed on other grounds, 489 So.2d 1130 (Fla. 1986); O'Bright v. State, 508 So.2d 385 (Fla. 1st DCA 1987).
The only evidence before this court concerning the child's resulting trauma is recited by the mother in the most recent sentencing hearing transcript (the only transcript provided). When questioned about how appellant's act affected the child's life over the last five years, the mother reported that at first the child had recurring nightmares, nausea, general fear of strangers, and headaches, which, according to the mother, were documented at her school. Also according to the mother, her daughter got her black belt in Tae Kwon Do so nobody will hurt her again. (The victim is now 10 years old).
As the state contends, this court has recently distinguished the supreme court's holding in Lerma v. State, 497 So.2d 736 (Fla. 1986), wherein the court stated that psychological trauma can never be used to depart in a sexual battery case, as being inapplicable to prosecutions under section 800.04 Florida Statutes. However we find these recent cases to be distinguishable as they involved violent physical and sexual assaults, unlike the instant case. In Kokx v. State, 498 So.2d 534 (Fla. 1st DCA 1986), this court refused to follow Lerma where, *1168 unlike the instant case, the defendant pled guilty to aggravated child abuse, not lewd and lascivious assault. In Barrentine v. State, 504 So.2d 533 (Fla. 1st DCA 1987), appellant was convicted of lewd and lascivious assault upon a child in violation of section, 800.04 Florida Statutes, as in the instant case. However unlike the instant case, in Barrentine, the 14 year old male victim was violently assaulted in the woods and as a result suffered public humiliation, ran away from home, and was suspended from school. This court found that the requisite standard of proof for the factual finding supporting departure was present in Barrentine. But from the record in the instant case, we do not find that such emotional hardship on the victim has been proven beyond a reasonable doubt. Hankey v. State, 485 So.2d 827, 828 (Fla. 1986), appeal after remand, 505 So.2d 701 (Fla. 1987). See also State v. Rousseau, 509 So.2d 281 (Fla. 1987). Further, we find Thomas v. State, 501 So.2d 752 (Fla. 5th DCA 1987), Casteel v. State, 498 So.2d 1249 (Fla. 1986) and Connell v. State, 502 So.2d 1272 (Fla. 2d DCA 1987) distinguishable as involving sexual battery convictions, unlike the instant case.
In the court's second departure reason, the judge states that because appellant cannot control his problem, and community control has failed, appellant should be sentenced to 15 years in prison because "the public, especially young children, has a right to be protected from a criminal who cannot or will not be rehabilitated". As the state contends, in Scobee v. State, 488 So.2d 595 (Fla. 1st DCA 1986), and Sarvis v. State, 465 So.2d 573 (Fla. 1st DCA 1985), the courts' departure reasons which effectively stated that "appellant's chances of being rehabilitated are nil", were deemed insufficient because no explanation as to why appellant could not be rehabilitated was given. In the instant case the court bases its similar conclusion on expert testimony and appellant's history of being treated for his mental illness as a "criminally sexual psychopath". However the state cites no cases to support this basis for departure, and our research has failed to reveal any cases where this state's sentencing guidelines overlap with procedures for civil commitments to mental institutions.
However, recently in Williams III v. State, 504 So.2d 392 (Fla. 1987), the supreme court reviewed Williams III v. State, 484 So.2d 71 (Fla. 1st DCA 1986) in light of Hendrix v. State, 475 So.2d 1218 (Fla. 1985). In Williams initially the trial court departed from the guidelines based on Williams' extensive criminal history which was described in the departure reasons, concluding that "there is no hope for rehabilitation of this individual". 484 So.2d at 72. Further, the trial court found that punishment for Williams' conduct should be substantially greater to protect society and deter him from future criminal activities. This court affirmed the trial court's sentence. The supreme court agreed with this court's conclusion that the trial court's reasons were substantially more than mere reference to appellant's prior record. "Neither the continuing and persistent pattern of criminal activity, or the timing of each offense in relation to prior offenses and release from incarceration or supervision, are aspects of a defendant's prior criminal history which are factored in to arrive at a presumptive guidelines sentence. Therefore there is no prohibition against basing a departure sentence on such factors." 504 So.2d at 393.
However, in Jones v. State, 501 So.2d 665 (Fla. 1st DCA (1987) this court found:
Entries in criminal histories which show no disposition, disposition unknown, arrest only or other non-conviction disposition shall not be scored. Fla.R.Crim.P. 3.701(d)(5)(a)(1). Nor can such entries be considered clear and convincing reasons for departure. See Weems v. State, 469 So.2d 128 at 130 [(Fla. 1985)]".
Jones at 667. (emphasis supplied).
Here, appellant's first offense which occurred in Missouri, falls into the "arrest only or other non-conviction disposition" category. We, therefore, hold that the second departure is unlawful. However, given the unique facts of this case in light of the above case law, we certify the *1169 following question to the Florida Supreme Court as one of great public importance:
Whether, pursuant to its recent ruling in Williams III v. State, 504 So.2d 392 (Fla. 1987), a commitment to a mental institution for other than a criminal conviction and the subsequent conditional release or supervision status that existed at the time of the crime, are valid reasons for departing from the guidelines?
The trial judge in his first departure reason explains that appellant was on "probationary status" from the mental institution in Missouri when he committed the crime in question. The parties agreed that this "probationary status" does not qualify as "legal status" according to 3.701(d)(6) Fla.R.Crim.P., and therefore cannot be scored under legal constraint on the scoresheet. The rule defines legal status as follows; on parole, probation, community control; in custody serving sentence; escapees; fugitives; offenders in pretrial intervention or diversion programs. (Pre-trial release status, i.e., out on bail, is excluded, see Mize v. State, 495 So.2d 845 (Fla. 3rd DCA 1986)). Conditional release from a mental institution is not listed. This fact supports our need for clarification as to whether being on conditional release from a mental institution at the time of the offense can be a valid factor for consideration in departing from the guidelines.
Although the Missouri Criminal Sexual Psychopath civil commitment procedures under which appellant was initially committed may be loosely compared to a pretrial intervention or diversion program designed as an attempt to keep an individual out of the criminal justice system, unlike most diversion and pretrial intervention programs, the Missouri proceedings pertain only to those offenders who have a mental disorder with criminal propensities to commit sexual offenses and who are dangerous to others. See section 202.700 Mo. Rev. Stat.
The act upon which appellant was committed to a mental institution in Missouri is more appropriately compared to Florida's Baker Act involuntary placement proceedings, as provided pursuant to section 394.467 Florida Statutes. One pertinent difference however, is that if the patient was civilly committed in Florida on a criminal charge, upon discharge he shall be transferred to the custody of the appropriate law enforcement authorities, see section 394.469 Florida Statutes, unlike the provisions of the Missouri statute which place patients on probation for three years. See section 202.740 Mo. Rev. Stat.
We believe that an affirmance of the trial court's first and second reasons for departure, which are based upon appellant's history of mental disorder and civil commitment, would set an undesirable precedent with respect to individuals who commit offenses while on conditional release from mental health institutions in Florida. We are unwilling to suggest that these individuals' mental disorders and civil commitment histories should be valid bases for departure in sentencing them to lengthy state prison terms for a subsequent criminal conviction.
However, it is obvious from the expert psychiatric testimony in the record that appellant needs constant supervision and continual medication so that his propensity to commit lewd and lascivious acts will be prevented. We recognize that appellant is a potential danger to society; however, because appellant has served a prison sentence longer than his guidelines maximum recommendation of 12-30 months incarceration or community control, and all of the trial court's reasons for departure are invalid, we cannot legally justify a sentence longer than the guidelines permit. This does not mean that we are comfortable with appellant being out in public where he will be exposed to female children. The legislature has defined "mentally ill" as an impairment ... of the ability to exercise conscious control of one's actions ... See section 394.455(3) Florida Statutes (1985). We suggest that the trial court, upon ordering appellant's release from prison, may want to consider reviewing appellant's post-war condition in light of sections 394.463(1)(b)2 and 394.463(2)(a)1 Florida Statutes (1985), with respect to appellant's eligibility for treatment with the Veterans *1170 Administration or other federal agency pursuant to sections 394.467 and 394.4672 Florida Statutes (1985). We further suggest that if a current psychiatric examination reveals that appellant still suffers from the inability to control his impulses when exposed to female children, appellant will be better off living in an environment supervised by an agency such as the Veterans Administration, than living unsupervised in a community where his impairment may likely lead to his harming other victims and result in subsequent incarceration in a state prison.
Having found all of the trial court's reasons for departure to be invalid, this case is reversed and remanded for prompt imposition of a sentence within the recommended guidelines range. The trial court judge shall determine whether appellant has completed service of his sentence, and if so he shall be discharged or otherwise provided for as suggested and set forth in this opinion.
JOANOS, WIGGINTON and ZEHMER, JJ., concur.
NOTES
[1] Pursuant to Florida Rules of Criminal Procedure 3.701, the following reasons are enumerated to depart from the Guidelines' recommended sentence of community control or twelve to thirty months incarceration:

1. In December, 1976, Mr. Jaggers was charged with Child Molestation by the Grand Jurors of the State of Missouri. On November 10, 1977, the Circuit Court of St. Louis found Mr. Jaggers to be a "criminal sexual psycopath" and committed him to a Mental Health State Hospital for treatment and detention. Less than three years later, Mr. Jaggers was conditionally released from the Mental Hospital and placed on probationary status for three years. Thereafter, he came to Florida and committed the instant offense on October 31, 1981, while still on probationary status from the State of Missouri. Past attempts to rehabilitate and treat Mr. Jaggers in mental hospitals and/or the community for his sexual deviancy have failed. Since this was not scored on the scoresheet, this Court considers this information relevant in determining the appropriate sentence for Mr. Jaggers.
2. Mr. Jaggers has admitted and his psychologists confirm that he can not control his problem with young girls without some type of external controls. Community based supervision has failed to deter Mr. Jaggers from committing illegal sexual acts and his medical records indicate if he is placed in society, he will revert back to criminal behavior. The public, especially young children, has a right to be protected from a criminal who cannot or will not be rehabilitated.
3. While the scoresheet allows for physical injuries, the Court considers the mental trauma done to the six year old victim to be a valid reason for departure. The court observed the victim's emotional state during her testimony at trial and has heard the testimony of the victim's mother as to how this incident has affected the child's life.
4. A Guideline Sentence of community control or twelve to thirty months incarceration is insufficient to provide the appropriate retribution, deterrance or rehabilitation of Mr. Jaggers.