KHOUZAM, Judge.
Mark Aaron Yudin appeals his convictions and sentences following a jury trial for burglary of a dwelling and grand theft. Yudin raises two issues on appeal, but the only one which merits discussion is his argument that the trial court erred in denying his motion for judgment of acquittal made at the close of the evidence. Because the evidence was sufficient to withstand the motion, we affirm.
Sometime between the morning of May 4 and the morning of May 5, 2009, a Highlands County home was burglarized. A number of items were taken, including two televisions, a desktop computer, a laptop computer, various pieces of women’s jewelry, a men’s Seiko wristwatch, and a dresser drawer full of the victim’s personal documents such as passports, a social security card, credit cards, and health insurance cards.
Yudin’s father testified at trial that Yu-din lived with him at the time the burglary took place. The house they jointly occupied sits approximately 1.5 miles from the victim’s house. According to Yudin’s father, on the evening of May 4 Yudin was out but “came in about ten, went out again, [and] came back about four” in the morning on May 5. Yudin left again around 5:45 that morning.
David Cavanaugh testified that Yudin and a man named Jerry Costa arrived at his house in the early afternoon on May 5. Cavanaugh had a history of purchasing secondhand property from Costa, and Cos-ta called Cavanaugh that day claiming he “had some things” Cavanaugh might want to buy. Cavanaugh told Costa to bring the items over, and a short time later, Costa arrived in a vehicle driven by Yudin. The circumstances of their arrival apparently caused enough suspicion that Cavanaugh’s grandson called the police with “a concern about a vehicle with some items that were being off-loaded.”
Before the police arrived, Costa removed a laptop and a desktop — later identified by the victim as the stolen computers — from Yudin’s car and placed them on a bench for Cavanaugh to inspect. Cava-naugh testified that although Costa was the one who called about bringing the computers by and also the one who physically took the computers out of Yudin’s car, Yudin was the one who showed Cavanaugh the computers and described them during the attempted sale. According to Cava-naugh, on that day his “primary conversation was with Mr. Yudin” and they did not reach the issue of price only because they were interrupted when the police arrived.
A responding officer testified that upon arriving at Cavanaugh’s residence, he plainly observed a large disheveled pile of items in the back seat of Yudin’s car. Poking out of the pile was a dresser drawer containing a variety of the victim’s personal documents including his passport, social security card, and work identification card. A box of vinyl gloves was also found in the pile. Yudin was wearing a men’s Seiko wristwatch when the police arrived. The police seized the items, and Yudin was taken into custody, but Costa was allowed *459 to leave after removing personal property from the trunk of Yudin’s ear.[1] Later the police were called back to Cavanaugh’s residence, where they were able to determine that more of the victim’s property had been left inside.
Yudin testified in his own defense. He stated that during the night of May 4, he went to a friend’s house and spent most of the night on her couch because he had had too much to drink. He awoke around four in the morning on May 5 because Costa called him, and the two made arrangements to drive to West Palm Beach later that morning. After his conversation with Costa, Yudin went home, arriving just before 5:00 a.m.
Yudin testified further that shortly after returning home that morning, he drove to meet Costa in the parking lot of a bar, where Costa and another man were waiting for him. Costa and the other individual loaded Yudin’s car with various items, the only one of which Yudin could identify was a desktop computer. When Yudin was asked at trial if he inquired where the property came from, he testified that Cos-ta had told him it came from a storage unit that had been abandoned and auctioned off. From the bar, he drove to Costa’s apartment, where he waited in the car while Costa unloaded some of the property.
Yudin testified that he later dropped Costa off at a pawn shop and left to have breakfast with his girlfriend. Yudin entered into evidence a pawn receipt dated May 5, 2009, at 12:01 p.m. indicating that Costa had received approximately $600 for various pieces of jewelry. Yudin testified that when he later picked Costa up from the pawn shop, Costa offered him the Seiko watch and he accepted it. From the pawn shop, Yudin drove himself and Costa to Cavanaugh’s. Yudin denied participating in the offer to sell Cavanaugh the computers.
The defense moved for a judgment of acquittal, arguing that there was insufficient evidence to support a conviction. Yudin claimed that the evidence merely showed that Costa committed the crimes and that Yudin met up with him only intermittently to provide transportation, fully unaware of Costa’s criminal activities. The trial court denied the motion, and the jury found Yudin guilty as charged. Yu-din was sentenced to fifteen years in prison. He timely appealed.
An appellate court reviews the denial of a motion for judgment of acquittal de novo and affirms the conviction if it is supported by competent, substantial evidence. Boyd v. State, 910 So.2d 167, 180 (Fla.2005). “A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.” Lynch v. State, 293 So.2d 44, 45 (Fla.1974). “Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts,” the case must go to the jury. Id.
The “ ‘unexplained possession of recently stolen property is not only sufficient to support a theft conviction, but when a burglary necessarily occurs as an *460 adjunct, the inference of guilt from the unexplained possession of the recently stolen goods also supports a conviction for burglary.’ ” Francis v. State, 808 So.2d 110, 134 (Fla.2001) (quoting T.S.R. v. State, 596 So.2d 766, 767 (Fla. 5th DCA 1992)). Where the defendant’s explanation for the possession of recently stolen property is only arguably reasonable, the ease goes to the jury. See Wilson v. State, 884 So.2d 74, 76 (Fla. 2d DCA 2004) (discussing “arguably” versus “patently” reasonable explanations). Possession in this context must be “exclusive,” but this “does not mean that defendant’s possession must be separate from the possession of all other persons. The joint possession of two or more persons acting in concert is ‘exclusive’ as to any one of them.” Scobee v. State, 488 So.2d 595, 598 (Fla. 1st DCA 1986).
Here, the State introduced evidence that hours after the burglary occurred, Yudin drove a car — in which the victim’s property could plainly be seen in a pile in the back seat — to the residence of a third party and engaged in what can only fairly be characterized as an attempt to sell some of the property. Although Costa was the one to set up the deal and the one to physically remove the computers from the car, Yudin drove the car and Cava-naugh testified that Yudin was the one who showed him the computers during the attempted sale. Even assuming for the sake of argument that this does not constitute “joint possession of two or more persons acting in concert,” Yudin conceded to wearing the victim’s watch, establishing his actual possession of recently stolen property-
Viewing the evidence and all reasonable conclusions therefrom in the light most favorable to the State, as we must, we believe that the motion for judgment of acquittal was properly denied. The evidence supported Yudin’s possession of at least three separate pieces of recently stolen property: his joint possession of the two computers he attempted to sell and his exclusive possession of the watch encircling his wrist. The jury could fairly and reasonably conclude from this evidence that Yudin acquired the property illegally. See Scobee, 488 So.2d at 598 (“There are two similar, yet separate and distinct, inferences that can be made from proof of possession of recently stolen property: (1) an inference that the possessor stole the property ... and (2) an inference that the possessor knew or should have known the property was stolen.”); see also T.S.R., 596 So.2d at 767 (“Although there is no direct physical evidence linking the defendant to the crimes the finder of fact has the right to infer guilt of theft from the unexplained possession of recently stolen goods.”).
Yudin’s explanation for his possession of the recently stolen goods does not compel a different outcome. We do not agree with the concurring opinion’s determination that Yudin’s explanation was patently reasonable. Instead, we conclude that his explanation was at best only arguably reasonable and that the issue was therefore properly sent to the jury, even though the State did not present any evidence which directly conflicted with it. See Wilson, 884 So.2d at 76 (“ ‘If, on the other hand, the explanation is only arguably reasonable or if there is any evidence which places it in doubt, the court should permit the jury to make the decision.’ ” (emphasis added) (quoting Coleman v. State, 466 So.2d 395, 397 (Fla. 2d DCA 1985))).
Because the evidence was sufficient to withstand Yudin’s motion for judgment of acquittal, the trial court did not err in denying it.
Affirmed.
*461 CRENSHAW, J., Concurs.
DAVIS, C.J., Concurs with opinion.

. Cavanaugh testified that from his house, he drove Costa to a motel. Cavanaugh testified that Costa later "went to Philadelphia” to pursue a job opportunity. Costa’s whereabouts were thereafter unknown, and he was neither charged as a defendant nor called as a witness in this case.