NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ALBERT R. WALLS,                           )
                                           )
      Appellant,                    )
                                           )
v.                                         )          Case No.  2D14-2622
                                           )
STATE OF FLORIDA,                          )
                                           )
      Appellee.                     )
                                           )

Opinion filed November 6, 2015.

Appeal from the Circuit Court for Pasco
County; Pat Siracusa, Judge.

Howard L. Dimmig, II, Public Defender, and
Ama N. Appiah, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi Attorney General, and
Cerese Crawford Taylor, Assistant Attorney
General, Tampa, for Appellee.


LaROSE, Judge.

      Albert Walls challenges his conviction and sentence for second-degree

grand theft.  We have jurisdiction.  See Fla. R. App. P. 9.140(b)(1)(A).  Mr. Walls argues

that the trial court erred in denying his motion for judgment of acquittal.  He also

contends that the trial court erroneously denied his motion for a mistrial because of an

alleged violation of his Fifth Amendment rights.  Mr. Walls' arguments are without merit.

See Yudin v. State, 117 So. 3d 457, 459 (Fla. 2d DCA 2013).  Accordingly, we affirm.

We review, de novo, the denial of Mr. Walls' motion for judgment of acquittal.  See Caylor v. State, 78 So. 3d 482, 492 (Fla. 2011).  We apply an abuse of discretion standard to analyze the denial of his mistrial motion.  Thomas v. State, 748 So. 2d 970, 980 (Fla. 1999).

Background

Mr. Walls provided home-health services to the victim.  She was recovering from surgery.  She also took medication for various psychological conditions.  Mr. Walls knew that the victim was receiving proceeds from a class action settlement involving the makers of her medication.  In March 2008, less than a month after Mr. Walls' home-health-care services ended, he and the victim began a romantic relationship.

Because of her various health issues, the victim lived with her mother, who also was the payee for the victim's social security disability payments.  As the relationship with Mr. Walls grew more serious, he encouraged the victim to become less dependent on her mother.  In fact, he threatened to end the relationship unless the victim moved out of her mother's home.

The couple broke up in the summer of 2008 but reunited in January 2009, soon after the victim received additional payouts from the class action.  Mr. Walls continued to pressure the victim to sever her family ties.  The victim moved into her own apartment soon thereafter.

When the victim received her additional class action payments, she wanted to deposit them into her own bank account, rather than in her mother's account

as she had done previously. She and Mr. Walls went to the bank to open a new account for her. Because of prior worthless check problems, the bank would not open an account for the victim. Mr. Walls offered to open the account in his name. He promised that the victim would have access to the account and that the deposited funds would be used for her benefit. Shortly after opening the account, however, he blocked the victim's access to it. He began withdrawing funds for his personal use. All the while, the victim struggled to pay for her medication, doctor's bills, phone service, gasoline, and food. In June 2009, Mr. Walls withdrew the remaining funds, almost $38,000, and closed the account, all without the victim's knowledge or approval. By this time, her physical and psychological condition had deteriorated considerably.

The victim repeatedly asked Mr. Walls to return her money; he refused each time. Once he learned that the Department of Children and Families (DCF) was investigating his possible exploitation of the victim, he told the victim that if she called off the investigation, he would return her money. Even after the victim took steps to end the investigation, Mr. Walls still failed to live up to his promise.

At trial, a DCF investigator testified about her investigation of Mr. Walls. During direct examination, the prosecutor asked the investigator whether she was ever able to speak to Mr. Walls. She replied that she had not. Mr. Walls' counsel objected and asked for a mistrial, alleging that the question and answer constituted a comment on Mr. Walls' right to remain silent.

After the jury convicted Mr. Walls of second-degree grand theft of property valued at $20,000 or more, but less than $100,000, the trial court sentenced him to ten years in prison.

- 3 -

<u>Discussion</u>

<u>Grand Theft</u>

As to Mr. Walls' first issue, whether the trial court properly denied his motion for judgment of acquittal, we note that theft is defined as follows:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) deprive the other person of a right to the property or a benefit from the property or (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

§ 812.814(1), Fla. Stat. (2008).

"Obtains or uses" includes "taking or exercising control over property, making an unauthorized use, disposition or transfer of property, or obtaining property by fraud, willful misrepresentation of a future act, or false premise."  § 812.012(3)(a)-(c).

It is well settled that "[g]enerally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence."  <u>Caylor v. State</u>, 78 So. 3d 482, 492 (Fla. 2011) (quoting <u>Johnston v. State</u>, 863 So. 2d 271, 283 (Fla. 2003)).  Viewing the evidence and all reasonable conclusions de novo and in the light most favorable to the State, as we must, <u>see</u> <u>Yudin</u>, 117 So. 3d at 459, we can easily conclude that the trial court properly denied the motion for judgment of acquittal.

Mr. Walls "obtained or used" the victim's money when he tricked her into putting her funds in his account, spent the class action settlement proceeds for his own benefit, and denied the victim access to her own money.  Incredibly, Mr. Walls argues that he had a legitimate property interest in those funds because the account was in his name.  He claims that because the victim could comprehend the meaning of her actions when she put her money in his account, his actions do not constitute theft.  In support of

this assertion, he relies on Hinckle v. State, 355 So. 2d 465 (Fla. 3d DCA 1978), in which the Third District reversed a theft conviction where the defendant co-owned the allegedly stolen property. Our case is easily distinguishable. In Hinckle, the romantically involved Casper and Hinckle agreed to open a joint bank account to which each had access. 355 So. 2d at 466. After their relationship soured, Hinckle was prosecuted for his withdrawals from the account. Id. In contrast, here, the evidence easily established that Mr. Walls fraudulently procured the money from the victim with his false promises, denied her access to his account, and spent her money solely for his benefit. The jury certainly had ample evidence before it to conclude that the victim, who suffered from various health issues, opened the bank account in Mr. Walls' name for him to be a caretaker of her money.

Mr. Walls' conduct is the sort that the legislature sought to punish when it defined "obtain or use" for the purposes of the theft statute as "obtaining property by fraud, willful misrepresentation of a future act, or false premise." § 812.012(3)(c); see also Starling v. State, 677 So. 2d 4, 6 (Fla. 5th DCA 1996) (holding that a victim's nonconsent to the transfer of property can be proved by circumstantial evidence).

The State presented ample evidence to send the case to the jury. Mr. Walls knowingly and purposefully took and used the victim's money for his own benefit. The trial court properly denied Mr. Walls' motion for judgment of acquittal.

<u>Motion for Mistrial</u>

Mr. Walls' second issue, whether the trial court erroneously denied a mistrial motion, fares no better under an abuse of discretion standard. See Thomas, 748 So. 2d at 980. The DCF investigator's testimony that she did not speak with Mr. Walls is hardly the type of evidence that "either deprive[s] the defendant of a fair and

impartial trial, materially contribute[s] to the conviction, [is] so harmful or fundamentally tainted as to require a new trial, or [is] so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise." <u>Salazar v. State</u>, 991 So. 2d 364, 372 (Fla. 2008) (quoting <u>Spencer v. State</u>, 645 So. 2d 377, 383 (Fla. 1994)).  Mr. Walls contends that the investigator's negative answer to an inquiry about her ability to speak with him violated his Fifth Amendment right to remain silent. <u>See</u> Amend. V, U.S. Const.  He argues that the testimony inflamed in the jury the common belief that the innocent have nothing to hide.  <u>See</u> <u>Varona v. State</u>, 674 So.2d 823, 825 (Fla. 4th DCA 1996).

The trial court properly denied the mistrial motion.  The testimony was not a comment on Mr. Walls' right to remain silent.  Read in context, the testimony was merely a statement that the investigator attempted, but was unable, to make contact with Mr. Walls during her investigation.  It contained no implication that Mr. Walls necessarily had anything to hide.  Thus, this testimony did not deprive Mr. Walls of a fair and impartial trial.

### Conclusion

The trial court correctly denied Mr. Walls' motion for judgment of acquittal. Similarly, the trial court did not abuse its discretion in denying Mr. Walls' motion for a mistrial.  Accordingly, we affirm.

Affirmed.


NORTHCUTT and SILBERMAN, JJ., Concur.